[No. A096372. First Dist., Div. Two. July 19, 2002.]

CHRISTOPHER FLETCHER, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
OAKLAND POLICE DEPARTMENT, Real Party in Interest.

**COUNSEL**

Diane A. Bellas and Adrienne A. Elenteny, Public Defenders, for Petitioner.

No appearance for Respondent.

John A Russo, City Attorney, Randolph W. Hall, Assistant City Attorney, and Kathleen Salem-Boyd, Deputy City Attorney, for Real Party in Interest.

**OPINION**

**LAMBDEN, J.**—In this case we consider whether the procedure first described in *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr.

897, 522 P.2d 305] (*Pitchess*) permits discovery of the fact that an arresting officer previously worked for another law enforcement agency. We conclude that nothing in the statutory scheme which codified the principles set forth in *Pitchess* precludes disclosure of the length of an officer's present employment or potentially relevant facts relating to law enforcement employment other than the officer's current job. Accordingly, we direct the trial court to vacate its prior order and to conduct further proceedings to determine whether the real party in interest has information pertaining to these officers' history of law enforcement employment that can lead to evidence potentially relevant to the petitioner's defense.

BACKGROUND

Christopher Fletcher (petitioner) is charged with unlawfully resisting, delaying or obstructing a police officer in violation of Penal Code section 148, a misdemeanor. Petitioner pled not guilty to the charge and filed a *Pitchess* motion pursuant to Evidence Code section 1043 (for discovery of certain information from the arresting officers' personnel files). The Oakland Police Department (hereinafter OPD) opposed the motion. (Further statutory references are to the Evidence Code, unless otherwise noted.)

The trial court found that petitioner had made a showing of materiality that was sufficient to permit discovery of prior complaints of excessive force or violence, as well as potential evidence suggestive of fabrication of facts by the arresting officers. Thereafter, the trial court conducted an in camera inspection of the officers' personnel files and ordered that certain matters described in the files should be disclosed to the petitioner. The information provided to petitioner stemmed from incidents in 1999 and 2000.

Petitioner also argued that he was entitled to discovery of prior employment by other police agencies within the five-year time limitation provided by section 1045, subdivision (b)(1). In order to extend the *Pitchess* procedure to other agencies which might have discoverable information within the parameters of *Pitchess*, petitioner requested an order seeking: "10) Disclosure of subject officer[s'] employment at other police departments or agencies within five years of the date of the event or transaction which is the subject of the above-entitled litigation. (Evidence Code sections 1045, 1043.)" The OPD objected and argued that all information contained in its files pertaining to prior employment by other law enforcement agencies was privileged and could not be disclosed, as a matter of law.

The trial court sustained the OPD's objection as follows: "Then the issue is, well, is there a sufficient finding nevertheless for disclosure of that [other

law enforcement employment within five years] because often sensitive information is disclosed pursuant to a *Pitchess* motion? For the finding of materiality, that seems to have . . . taken place by the requirement of a specific factual scenario under the law. And that specific factual scenario is sort of made in the context of the employment within a local agency under the strictures, personnel policies and so forth of the local agency. And there is, I think, the danger, which certainly wouldn't apply in all cases or even the majority of cases, that disclosure of the employment could lead to other sensitive information outside of the good cause showing for the materiality. [¶] Therefore, I'm going to sustain the City Attorney's objection to Request 10 . . . ." This petition followed.[1] We issued an order to show cause and calendared the case for argument.

The issue of law thus presented is whether a properly framed *Pitchess* motion, which results in a finding of materiality sufficient to support good cause to suspend the privilege, requires a respondent to produce for the trial court's examination all potentially relevant information regarding an officer's employment history, including information pertaining to other law enforcement employment within the five-year period provided by statute.

*Standard of Review*

The *Pitchess* procedure applies in both criminal and civil cases (*Rosales v. City of Los* Angeles (2000) 82 Cal.App.4th 419, 427 [98 Cal.Rptr.2d 144] ["the whole purpose behind the Penal and Evidence Code provisions is to provide disclosure in a civil or criminal proceedings where the moving party show the information sought is material to the subject matter involved in the pending litigation"].) And the function of appellate review is substantially the same in civil and criminal appeals (6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Appeals, § 140(1), p. 387; see *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278]).[2] In either type of case, the interpretation of a legal principle or statute is a question of

[1]This is petitioner's second writ petition involving this issue. As this is a misdemeanor case, we denied petitioner's initial writ petition (*Fletcher v. Superior Court*, A095400), and told petitioner to first seek writ relief in the appellate division of the superior court. The appellate division summarily denied the petition. Real party in interest also filed an appeal involving this matter (*City of Oakland v. Superior Court*, A096302), which was later withdrawn.

[2]In the context of a civil case, the Supreme Court relied on its opinion in a criminal case to describe the essential appellate function in both types of cases as follows: "Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule

law which we review de novo (*People v. Saephanh* (2000) 80 Cal.App.4th 451, 457 [94 Cal.Rptr.2d 910]).

While our dissenting colleague correctly observes that rulings on *Pitchess* motions are ordinarily reviewed under the abuse of discretion standard, we cannot agree that the best interpretation of the record is that the trial court properly exercised its discretion. We conclude that the trial court ruled as a matter of law, not only because that is the most reasonable interpretation of the limited record, but also because the trial court expressly relied on a recent case when it framed its ruling. The OPD itself appears to concede that the court ruled as a matter of law and contends that: "records of the officers' prior employment are not discoverable under Cal. Evidence Code § 1043."

The trial court's ruling is unambiguous in its conclusion that the facts offered were sufficient to establish the required material connection between the charged offense and the information sought pertaining to current employment. The court also concluded that the same facts were insufficient to permit examination of even the bare fact that the officers might have been in their current jobs less than five years and previously employed elsewhere as police officers. Therefore the trial court must have required a different showing of materiality as to prior police employment than the showing that the court had already found sufficient to require disclosure of information regarding current employment. The decision to apply a different standard of proof of materiality was necessarily a legal determination.

We are also persuaded that the court believed that its finding of materiality as to prior employment did not depend upon the relationship between the factual scenario of the charged offense and the defense offered by the petitioner. We can infer this from the court's comment that materiality could be impinged by the policies of the prior employing agency. The court said that its examination of the "factual scenario is sort of made in the context of the employment within a local agency under the strictures, personnel policies and so forth of the local agency." This suggests that the trial court thought that the factual scenario presented by the motion with reference to current employment could not be applied to information in the records of the

---

to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently. See generally *People* v. *Louis* (1986) 42 Cal.3d 969, 985-987 [232 Cal.Rptr. 110, 728 P.2d 180].)" (*Crocker National Bank v. City and County of San Francisco, supra,* 49 Cal.3d at p. 888.)

current job that merely indicated prior police employment. Thus, even if the ruling was not intended to be made as a matter of law, the trial court did not apply the law to the facts presented. This constituted a failure to exercise the trial court's discretion. ▇▇▇ "[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. [Citations.]" *(People v. Penoli* (1996) 46 Cal.App.4th 298, 302 [53 Cal.Rptr.2d 825].) "Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]" *(Id.* at p. 306; *People v. Downey* (2000) 82 Cal.App.4th 899, 912 [98 Cal.Rptr.2d 627].)

▇▇▇ Finally, even if the ruling was not made as a matter of law and the trial court attempted to exercise its discretion, that discretion was abused. As we discuss below, the threshold for discovery embodied in section 1043 has been characterized by our Supreme Court as "relatively low." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83-86 [260 Cal.Rptr. 520, 776 P.2d 222] *(Santa Cruz)*). All the law requires to show good cause to permit such discovery is the "materiality" of the information to the subject matter of the pending litigation and a reasonable belief that the governmental agency has the "type" of information requested. This court found materiality but refused to allow disclosure of any facts that might have allowed further inquiry into prior police work. The trial court cut off such discovery even though the mere fact of the existence of prior police employment is neutral on the face of the record, and even though the OPD has never denied that it has the type of information sought.

The trial court thus created a Catch-22[3] for the petitioner: he cannot learn about any prior police employment until he can present specific facts describing that employment. Also, the reasons stated by the trial court for denying discovery of the existence of prior employment were that it could lead to disclosure of "other sensitive information" or that it might be "embarrassing" at trial. These reasons do not relate to the materiality of the requested information and had the effect of creating a different, and greater, burden of proof for discovery of the simple facts of prior police employment. Such a rule would require a defendant to make a greater showing to learn merely that an officer had worked in another venue, than would be required to learn of actual allegations of wrongdoing in the officer's current

---

[3]"[A] supposed law or regulation containing provisions which are mutually frustrating; . . . a set of circumstances in which one requirement, etc., is dependent upon another, which is in turn dependent upon the first. [From a paradoxical rule postulated in the novel *Catch-22* (1961), by Joseph Heller; released as a film in 1970 (Paramount Pictures).]" (Oxford English Dict. (2d ed. 1989) p. 973.)

job. Aside from the fact that this increased burden is not supported by any authority and is contrary to the constitutional requirements expressed by the Supreme Court, the result of its application is plainly irrational and arbitrary. If the trial judge premised his ruling on such mutually frustrating conditions, he abused his discretion. We prefer to conclude that this veteran trial judge attempted to base his decision on the law, and missed his target.

## DISCUSSION

The California Supreme Court summarized the history of the *Pitchess* motion in *People v. Mooc* (2001) 26 Cal.4th 1216 [27 Cal.4th 101a, 114 Cal.Rptr.2d 482, 36 P.3d 21] (*Mooc*), and emphasized that such motions always involve constitutional issues. The court described the motion as a "procedural mechanism for criminal defense discovery, which must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial. [Citations.]" (*Id.* at p. 1225.)

*Pitchess* was decided on constitutional grounds in 1974, and has engendered controversy between police agencies and litigants ever since. The Legislature was aware of the facts of the *Pitchess* decision (which, like the case before us, involved a charge of resisting arrest in violation of Pen. Code § 148, a claim of self-defense and a request for records of citizen complaints of prior excessive use of force) and of reports of document destruction in response to the decision. The Legislature reacted to these allegations of systematic purging of law enforcement personnel files by enacting a statutory system to permit access to police personnel records while protecting the privacy of individual officers. The 1978 amendments were premised upon the Legislature's appreciation that refusal to permit disclosure of official information by invocation of the privilege for official information (embodied since 1872 in § 1040) jeopardized the prosecution of criminal cases. (Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 7, 1978, p. 2.)

Two bills were proposed. Both versions created a newly described "peace officer" privilege designed to protect the privacy of police officers; and both proposals codified the procedures by which the privilege could be suspended after an independent determination by a court of whether the information sought by the motion might be potentially relevant to a defense against prosecution. As originally proposed, Senate Bill No. 1508 (1977-1978 Reg. Sess.) would have required citizen complaints to be retained for seven years; Senate Bill No. 1436 (1977-1978 Reg. Sess.) would have preserved complaints for three years. The new statutes thus incorporated a new policy for document retention and included a compromise provision requiring citizen complaints to be preserved "for a period of at least five years." (Pen. Code, § 832.5, subd. (b).)

The Senate Judiciary Committee's analysis of Senate Bill No. 1436 noted that, prior to *Pitchess*, officers could claim the governmental privilege of section 1040 to protect personnel files from disclosure, thus creating a potential conflict with section 1042, subdivision (a), which codified the due process then demanded by the United States Supreme court in *United States v. Reynolds* (1953) 345 U.S. 1, 12 [73 S.Ct. 528, 534, 97 L.Ed. 727, 32 A.L.R.2d 382] ("since the Government which prosecutes an accused also has the duty to see that justice is done, it [would be] unconscionable to allow it to undertake prosecution and then invoke its governmental privilege to deprive the accused of anything which might be material to his defense"). The statutory scheme that resulted from *Pitchess* thus was an attempt to deal with the unavoidable problem that an officer's claim of privilege could result in the dismissal of charges in cases where the excluded material could have been relevant to the defense. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Apr. 3, 1978, p. 6.)

The Assembly's analysis of Senate Bill No. 1436 also commented that "limitations as to admissible information were not included in the DRAFT because . . . the purpose of discovery has traditionally been to permit the petitioner to discover facts which will lead to admissible evidence and not only evidence which is itself admissible." (Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 28, 1978, p. 4, underscoring in the original.) From this point onward, the only general standard for discovery of privileged information in an officer's personnel file has always been its potential relevance as determined by a judge. This standard has been unwavering, and was most recently reiterated by the Supreme Court in *Mooc*.

The Legislature's creation of the new privilege described in Penal Code section 832.7 regulated discovery of those " 'personnel records' " defined in section 832.8 as: "any file . . . containing records relating to any of the following: [¶] (a) Personal data, including marital status, family members, educational and *employment history*, home addresses, or similar information. [¶] . . . [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy." (Italics added.)

The Legislature provided the means for obtaining access to such information by the procedures described in sections 1043 through 1047. These procedures are expressly consistent with the reasoning of the Supreme Court in the *Pitchess* opinion. When a defendant seeks discovery from a peace officer's personnel records, he or she must "file a written motion with the appropriate court . . ." (§ 1043, subd. (a)) and describe the proceeding, the party seeking disclosure, the peace officer, the governmental agency having

custody of the records, and the time and place for the motion for disclosure will be heard. (*Id.,* subd. (b)(1).) Under section 1043, subdivision (b)(2), the *Pitchess* motion must also describe "the type of records or information sought" and include "[a]ffidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or the information from the records." (§ 1043, subd. (b)(3).)

The Supreme Court has since recognized that the circumstances presented by such motions must permit more latitude than other motions with regard to what may be considered adequate factual support. Accordingly, section 1043 embodies a "relatively low threshold" for discovery and is supportable by affidavits made on information and belief. (*Santa Cruz, supra,* 49 Cal.3d at pp. 83-86.) All that is required is that the information sought must have some factual basis and must be stated with " 'specificity' " to preclude the possibility of a defendant simply casting about for any information which might prove helpful to the defense. (*Id.* at p. 85.)

The opinion in *Santa Cruz* describes the statutory scheme as a "veritable model of clarity" and states flatly that section 1043 requires a showing of good cause in only "two general categories: (1) the 'materiality' of the information or records sought to the 'subject matter involved in the pending litigation,' and (2) a 'reasonable belief' that the governmental agency has the 'type' of information or records sought to be disclosed." (*Santa Cruz, supra,* 49 Cal.3d at p. 83.) In this case, allegations supporting both these categories are described in the supporting declaration of petitioner's attorney. Moreover, the OPD can be reasonably expected to have information regarding prior police employment and has never claimed it does not.

"Materiality" is the principal issue here. It is undisputed that the charge against petitioner (resisting arrest in violation of Pen. Code, § 148, subd. (a)) requires the same examination of materiality that was involved in *Santa Cruz.* In that case, the Supreme Court reasoned as follows: "*Pitchess* involved an arrestee who asserted self-defense to a charge of battery on a police officer. The defendant sought discovery of records of prior complaints against the officers concerning the officers' propensity for violence. We held that the information was material, noting that the information could be used to cross-examine the officers at trial and was 'unquestionably relevant and admissible' as character evidence of the officers' tendency to engage in violence. (11 Cal.3d at p. 537; see § 1103.)" (*Santa Cruz, supra,* 49 Cal.3d at p. 85.)

The opinion went on: "*People* v. *Memro* [(1985)] 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446] involved an arrestee who alleged that his

confession to a murder had been coerced. He sought discovery of records of prior complaints of violence against the interrogating officers. Applying the materiality standard of section 1043 (informed by the principles set forth in *Pitchess*), we held that the defendant had demonstrated good cause for the information requested. [Citation.] Counsel's declaration asserted that the confession had been coerced. [Citation.] Discovery might lead to admissible evidence that the interrogating officers had a 'habit or custom' of obtaining confessions by use of excessive force. [Citations.] Hence, we concluded that 'counsel's allegations sufficiently "set forth the materiality" of the requested information. [Citation.]' [Citation.]" (*Santa Cruz, supra*, 49 Cal.3d at p. 85.)

And the opinion concluded: "Applying these same principles to the case at bar, we are similarly persuaded that defendant here has sufficiently demonstrated the materiality of the requested records and information. Defendant is charged with resisting arrest. (Pen. Code, § 148.) The police reports make clear that considerable force was used to effect the arrest. Counsel's declaration asserts that the officers used excessive force 'so as to make said arrest illegal and otherwise improper.' The declaration sets forth, on the basis of information and belief, a specific factual scenario to support that assertion. Counsel avers that she seeks the information relating to prior complaints of excessive force against the arresting officers to 'show a tendency or propensity on the part of the arresting officers[s] herein to engage in the use of unlawful and excessive force in the execution of the arrests.'" (*Santa Cruz, supra*, 49 Cal.3d at p. 85.)

Where a trial court follows the Supreme Court's guidance and concludes, as this trial court did, that a defendant has made a showing of good cause, the custodian of records must bring to court all documents "potentially relevant" to the defendant's motion. The trial court then conducts an in camera review of the evidence (§ 1045, subd. (b)) and then may disclose to the defendant "such information [as] is relevant to the subject matter involved in the pending litigation." (*Id.*, subd. (a).) Although the custodian may object to the production of certain materials, the in camera review which follows is not a separate determination of good cause; it is intended to apply the safeguards designed by the Legislature to balance the privacy interests
of the police officers against the defendants right to mount an informed defense.

 The Supreme Court has repeatedly described the in camera hearing as part of the balance reached by the Legislature: "The relatively relaxed standards for a showing of good cause under section 1043, subdivision (b)—'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought—

insure the production for inspection of all potentially relevant documents. The in camera review procedure and disclosure guidelines set forth in section 1045 guarantee, in turn, a balancing of the officer's privacy interests against the defendant's need for disclosure." (*Santa Cruz, supra,* 49 Cal.3d at p. 84.)

However, the express statutory limits on disclosure are actually quite narrow: "The trial court shall 'exclude from disclosure: [¶] (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.' (Evid. Code, § 1045, subd. (b).)" (*Mooc, supra,* 26 Cal.4th at pp. 1226-1227.)

The only generalized statutory limitation is found in the provision allowing protective orders: the court may issue an order " '[u]pon motion seasonably made by the governmental agency . . .' 'which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.' [(Evid. Code, § 1045, subd. (d).)]" The statutes also permit a court to order that any such records disclosed " 'not be used for any purpose other than a court proceeding pursuant to applicable law.' (*Id.,* subd. (e).)" (*Mooc, supra,* 26 Cal.4th at p. 1227.)

Subdivision (c) of section 1045 provides one further limitation which does not apply here: "In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records." This last subdivision is limited by its express terms to issues regarding "the policies or pattern of conduct" (*ibid.*) of the *agency itself.* Also, the trial court here did not determine that "the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records." The court's only comments regarding "other sources" pertained to live testimony, and are not pertinent for the reasons discussed below.

As we have discussed, this entire procedure is founded upon the constitutional limitation that our Supreme Court has found to arise from "the prosecution's constitutional obligation to disclose to a defendant material

exculpatory evidence so as not to infringe the defendant's right to a fair trial. [Citations.]" (*Mooc, supra,* 26 Cal.4th at p. 1225.) The same constitutional constraint applies to sections 832.7 and 832.8 of the Penal Code, enacted after *Pitchess,* as well as to the original privilege set forth in section 1040. While our decision is not based upon constitutional grounds, any review of the statutory procedures enacted after *Pitchess* must necessarily be undertaken with the undisputed constitutional precepts in mind.[4]

In that context, section 1045 subdivision (a) can only be seen as a constitutionally required exception to the blanket prohibition of disclosure of the information formerly protected by section 1040. In *People v. Memro, supra,* 38 Cal.3d at pages 679-680 *(Memro),* the Supreme Court said as much: "It is significant that these statutes do not limit discovery of such records to cases involving altercations between police officers and arrestees, the context in which *Pitchess* arose. It is also noteworthy that the Legislature saw fit to ensure that '[n]othing in this article [citation] shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer participated, or which he perceived, and pertaining to the manner in which he performed his duties, provided such information is relevant to the subject matter involved in the

---

[4]The prosecution has an obligation to disclose to the defendant evidence favorable to the defendant and material to the issue of guilt or punishment. (*Strickler v. Greene* (1999) 527 U.S. 263, 280-282 [119 S.Ct. 1936, 1947-1949, 144 L.Ed.2d 286] *(Strickler)*; *Brady v. Maryland* (1963) 373 U.S. 83, 87 [83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215] *(Brady)*.) Such disclosure is necessary to protect the defendant's right to present a complete defense. (*California v. Trombetta* (1984) 467 U.S. 479, 485 [104 S.Ct. 2528, 2531-2532, 81 L.Ed.2d 413].) The failure to disclose favorable evidence would deprive the jury of the opportunity to consider all material evidence, offend our standards of justice, and deny the defendant a fair trial in violation of the due process clause of the Fourteenth Amendment. (*Brady, supra,* at pp. 87-88 [86 S.Ct. at pp. 1196-1197].) The prosecutor's disclosure obligation can arise even if the defendant has not requested disclosure. (Pen. Code, § 1054.1; *Strickler, supra,* at p. 280 [119 S.Ct. at pp. 1947-1948]; *United States v. Agurs* (1976) 427 U.S. 97, 107 [96 S.Ct. 2392, 2399, 49 L.Ed.2d 342]; *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 378 [285 Cal.Rptr. 231, 815 P.2d 304].)

Evidence is "material" for purposes of the disclosure obligation if there is a reasonable probability that its disclosure would have produced a different verdict or punishment. (*Strickler, supra,* 527 U.S. at pp. 280-281 [119 S.Ct. at pp. 1947-1948]; *United States v. Bagley* (1985) 473 U.S. 667, 682 [105 S.Ct. 3375, 3383-3384, 87 L.Ed.2d 481] *(Bagley)*.) "[A] 'reasonable probability' [is] a 'probability sufficient to undermine confidence in the outcome.' " (*Bagley, supra,* at p. 682 [105 S.Ct. at p. 3383] (opn., Blackmon J.); see *Kyles v. Whitley* (1995) 514 U.S. 419, 434 [115 S.Ct. 1555, 1565-1566, 131 L.Ed.2d 490].) The disclosure obligation encompasses both exculpatory and impeachment evidence (*Bagley, supra,* at p. 676 [105 S.Ct. at pp. 3380]) and includes not only information known to the prosecutor but also extends to information known only to persons acting on behalf of the prosecutor, such as police investigators. (*In re Brown* (1998) 17 Cal.4th 873, 879 [72 Cal.Rptr.2d 698, 952 P.2d 715]; *Strickler, supra,* at pp. 280-281 [119 S.Ct. at pp. 1947-1948]; *Kyles, supra,* at p. 437 [115 S.Ct. at p. 1567].)

pending litigation.' (Evid. Code, § 1045 subd. (a).) If anything, then, the principles of *Pitchess* were not only reaffirmed but expanded by the 1978 legislation."

Indeed, the cases have always referred to section 1045 as providing only "guidelines" or "general criteria" and there has been a steady expansion of the types of information subject to disclosure under the constitutional principles stated by the *Pitchess* decision. (*Santa Cruz, supra,* 49 Cal.3d at p. 84; *Memro, supra,* 38 Cal.3d at p. 679; *People v. Hustead* (1999) 74 Cal.App.4th 410, 416 [87 Cal.Rptr.2d 875] ["general guidelines"]; *Alt v. Superior Court* (1999) 74 Cal.App.4th 950, 955 [88 Cal.Rptr.2d 530] ["general criteria"].)

In *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53 [19 Cal.Rptr.2d 73, 850 P.2d 621] and in *Mooc, supra,* 26 Cal.4th 1216, the Supreme Court reiterated that potential relevance is the ultimate measure to be applied to requests for discovery of police files. *People v. Breaux* (1991) 1 Cal.4th 281, 312 [3 Cal.Rptr.2d 81, 821 P.2d 585] is distinguishable on its facts, but not in principle, because it involved an attempt to obtain evidence of citizen complaints filed *after* the arrest at issue, for use as character evidence. The Supreme Court ruled against the appellant on the grounds of relevance and quoted *Memro, supra,* 38 Cal.3d at page 687 for the principle that disclosure depends upon the potential relevance of the information without statutory limitation as to time.[5]

The language of section 1045 subdivision (a) is expansive (i.e., "Nothing in this section shall be construed to affect the right of access to records of complaints . . ."); and the section expressly permits discovery of information "pertaining to the manner in which [the officer] performed his duties, provided that such information is relevant to the subject matter involved in the pending litigation." (*Ibid.*) Indeed, it has been held that records outside the five-year limit can be disclosed: "[t]he five-year restriction in section 1045 . . . applies only to records of 'complaints, or investigations of complaints, or discipline imposed as a result of such investigations.' Other

---

[5] "In *Memro* a capital defendant sought to establish coercion of his confession. His request for discovery of information regarding complaints against South Gate police officers was summarily denied by the trial court. We held that defendant had demonstrated good cause for the requested discovery and that the trial court had abused its discretion in denying the motion. For guidance on retrial we noted the statutory five-year limitation on discovery, but we added: 'However, complaints regarding conduct which occurred after the interrogation in this case may be relevant to coercion.' (38 Cal.3d at p. 687.) [¶] When *Memro* was called to the attention of the trial court, it expanded its ruling, entitling defendant to seek discovery of complaints for the period beyond the battery incident and up to September 1975, the date of conviction." (*People v. Breaux, supra,* 1 Cal.4th at p. 312.)

The issue of whether the five-year time limit can be constitutionally imposed is before the Supreme Court in *City of Los Angeles v. Superior Court* (2000) 84 Cal.App.4th 767 [101 Cal.Rptr.2d 156], review granted January 17, 2001, S093628.

personnel records . . . are not so restricted and may be obtained upon proper compliance with . . . section 1043, subject to a *relevance determination* by the court . . . ." (*People v. Superior Court (Gremminger)* (1997) 58 Cal.App.4th 397, 407 [67 Cal.Rptr.2d 910], italics added.)

Accordingly, sections 1043 and 1045 do not limit discovery of confidential information from police officer personnel files to the types of information mentioned in the statutes or to the facts embraced by *Pitchess* (i.e., altercations between police officers and arrestees), because the government cannot invoke the privilege to withhold evidence relevant to a defense. (*Garden Grove Police Department v. Superior Court* (2001) 89 Cal.App.4th 430, 433 [107 Cal.Rptr.2d 642] (*Garden Grove*) citing *Memro, supra,* 38 Cal.3d at p. 679). For the same reason, *Pitchess* motions may also be used to discover information to impeach an officer's credibility. (*People v. Hustead, supra,* 74 Cal.App.4th at p. 417; *Garden Grove, supra,* at p. 433).

We recognize that *Pitchess* motions present difficult issues for the trial courts. This is because the motion is "based on the premise that evidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and that to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial. *Pitchess* and . . . sections 1043 through 1047 also recognize that the officer in question has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily." (*Mooc, supra,* 26 Cal.4th at p. 1227.) "The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense." (*City of San Jose v. Superior Court, supra,* 5 Cal.4th at p. 53.) When the rights in conflict are so dear, the arguments are vigorous.

It is for this reason that the statutes codifying the *Pitchess* motion require the intervention of a trial judge to examine the personnel records privately. The judge may order disclosed to the defendant only those records that are found to be potentially relevant and otherwise in compliance with the statutory exceptions. "In this manner, the Legislature has attempted to protect the defendant's right to a fair trial and the officer's interest in privacy to the fullest extent possible." (*Mooc, supra,* 26 Cal.4th at p. 1227.) However, once materiality has been shown, nothing in this procedure excuses the trial court from examining information that might reasonably lead to evidence relevant to the defense. It has never been disputed that the information here sought by petitioner's "Request Number 10" (Request No. 10) is contained in the OPD's records; and it is obvious that it is not subject to the

few exclusions expressed by the statutes.[6] Even so, it seems that the trial court felt it was precluded from completing the examination it began.

First, the trial judge was troubled that his determination of the potential relevance of even the bare fact of a prior police job would have to be based on the "specific factual scenario" described in the motion, and that the materiality of prior employment could not be based on those facts without reference to the circumstances of the prior employment (i.e., "And that specific factual scenario is sort of made in the context of the employment within a local agency under the strictures, personnel policies and so forth of the local agency"). As we have already discussed, this begs the question; initially, because there was presumably no way for the petitioner to know what those other local policies might be; and ultimately, because the court was not being asked by the present *Pitchess* motion to examine the underlying facts of any conduct in the course of the prior employment. The inquiry by defense counsel was only whether the records showed there had been other police employment. The court knew that petitioner was not seeking immediate disclosure of records from agencies other than the OPD; and that further motions would be required to obtain information from other venues of employment.

Second, the trial judge concluded that the "disclosure of the employment could lead to other sensitive information outside of the good cause showing for the materiality." The judge's comments suggest that he was influenced by the then recent opinion in *Garden Grove, supra*, 89 Cal.App.4th 430. In that case the defendant attempted to obtain the birth date of the arresting officer by invoking Penal Code section 1054.1.[7] The defendant did not make a *Pitchess* motion and the appellate court concluded that the privileges defined by Penal Code section 832.8 could not be circumvented without complying with the requirements of section 1043. The case informs us only that the birth date of a police officer is covered by Penal Code section 832.8

---

[6]We discern no merit in the contention that Request No. 10 is a prohibited "interrogatory." Petitioner's Request No. 10 seeks disclosure of "records, data and materials." The cases discussed herein refer even more broadly to "information." (See *City of San Jose v. Superior Court, supra,* 5 Cal.4th at p. 53; *Santa Cruz, supra,* 49 Cal.3d at p. 85; *Mooc, supra,* 26 Cal.4th at p. 1227.) Although *Pitchess* motions can be made in both civil and criminal cases (*Rosales v. City of Los Angeles, supra,* 82 Cal.App.4th 419, 427), there is no procedure in criminal cases to allow the sort of written interrogatories permitted by Code of Civil Procedure section 2019, subdivision (a)(2).

[7]Penal Code section 1054.1 provides in pertinent part: "The prosecuting attorney shall disclose to the defendant and or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] . . . [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence."

and can be discovered only by means of a *Pitchess* motion. Here it is undisputed that the privilege applies and that the trial court determined that the motion was sufficient to provisionally suspend the privilege. The question of whether the statutory definition includes birth dates, which was all that was considered in *Garden Grove,* does not provide any answer for us here. Arguably, an officer's birth date, which can be used to locate information such as credit and arrest records, is more "sensitive" than the fact that the officer had another police job. Even so, the *Garden Grove* opinion implies that such information is subject to disclosure by a proper *Pitchess* motion.

The questions before this court were: whether anything in the law precludes disclosure of the bare fact of prior law enforcement work; and, if not, whether anything in the facts and materials before the court showed that evidence pertaining to such employment could be potentially relevant to a defense. The trial court and the dissent effectively avoid answering either question by creating the paradoxical requirement that the petitioner must be able to state that there was prior police employment before he can learn if the records reflect any such employment. The trial court would not even permit the petitioner to learn whether the officers had been employed by OPD for less than the five year period set by statute. The following colloquy reflects the problem thus presented for the defense:

The public defender asked: "If an officer has only been employed at OPD for a year, are we entitled to that information? We're not getting anything further from the employment file that relates to another agency.

"THE COURT: I'm going to hold that you are not entitled to that information either just on the basis of that particular information is easily obtainable from other sources.

"Ms. ELENTENY: And are you thinking specifically testimony?

"THE COURT: Correct.

"Ms. ELENTENY: Okay. But we're not anticipating subpoenaing officers for Pitchess motions at this point.

"THE COURT: No.

"Ms. ELENTENY: So that leaves us in a bit of a quandary."

Possibly the court was suggesting that the defense might be entitled to learn of other law enforcement employment within the five-year time frame

from another source as described in section 1045. However, as we have already noted, subdivision (c) of section 1045 directs the court to "consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records," *but only where* "the issue in litigation concerns the policies or patterns of conduct of the employing agency."

It is more likely that the trial court thought the officers could be subpoenaed to court to testify for purposes of further *Pitchess* motions before trial, since that is what was expressly suggested. However, this again begs the question of whether the court would have then permitted the defendant to ask whether there were other law enforcement jobs that could be investigated. If the privilege protects against disclosure of the simple facts of the length of present employment and the identity of any prior employment, OPD's objection would have been the same if the officers were questioned in person, and the documents would have remained unavailable in the custodian's files. ■ The privilege and its exceptions apply to both pretrial discovery and to live testimony (*Hackett v. Superior Court* (1993) 13 Cal.App.4th 96, 98 [16 Cal.Rptr.2d 405]; *City of San Diego v. Superior Court* (1981) 136 Cal.App.3d 236, 239 [186 Cal.Rptr. 112] ["a litigant may not obtain indirectly what is directly privileged . . ."]).

■ The objection also presented another problem. The OPD has expressly attempted to avoid any pretrial review of information regarding prior police employment by asking that such evidence be deemed prejudicial before it was even examined by the court. The OPD complains that "[k]nowledge that the officer's employment had changed, in and of itself, could be exploited by the defense in questioning the officer at trial" by allowing the defense to imply that prior misconduct had lead to termination.

The following colloquy ensued:

"Ms. ELENTENY: [If there was misconduct] committed within five years of one agency and it would have been material, we would have gotten it but for the fact that he's changed employment. All we're asking for is the ability to go and seek this information and have another *Pitchess* hearing with another judge determining the materiality. We may not even get it. It's not assumed that simply because one Court makes a finding of materiality, that we take that finding, we wave it around and say, 'Look, this judge made a finding of materiality.' We're not asking for that. We're asking simply for the opportunity for another Court to review and make its own determination of materiality as to whether or not we are entitled to that information.

"THE COURT: Well, yeah, but you might not even do that. In other words, it seems to me, as an ex-defense attorney, that I would be overjoyed to learn

that an officer had been fired from another agency within the last five years and I'm getting that information pursuant to a *Pitchess* motion. I could care less why that person got fired, but now I'd have that information and I'd be able to embarrass that officer on the stand with it, without even going to the judge in San Francisco."

The foregoing statement suggests that the trial court concluded that the simple fact that these officers were employed as police elsewhere within five years was too prejudicial to be disclosed. We observe that if prejudice of this sort is potentially a problem, the solution is to be found in timely objections and by the formulation of in limine orders, and not by the categorical denial of pretrial discovery. While the court might have relied on section 352 at trial to balance the probative value of the evidence against its prejudicial effect, it was premature to do so in this context. There was no determination of even the preliminary fact of the existence of the requested information in the OPD files. The preliminary examination of the potential probative value of such evidence is precisely what the *Pitchess* procedure was designed to accomplish, and it did not occur here.

It is disingenuous to contend that information regarding prior employment cannot be "similar" to the misconduct alleged in the pending case. The record makes it clear that the petitioner sought to identify prior police employment solely for the purpose of further inquiry that could lead to "documentation of past officer misconduct which is *similar* to the misconduct alleged by defendant in the pending litigation . . ." (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021 [101 Cal.Rptr.2d 379], italics in original). This is consistent with the underlying legislative premise allowing such discovery, which has always been "to permit the petitioner to discover facts which will <u>lead to</u> admissible evidence and not only evidence which is itself admissible." (Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 28, 1978, p. 4, underscoring in original.) Such disclosure is required by the fundamental logic of *Pitchess,* which attempted to ameliorate the impact of constitutionally required disclosure of sensitive evidence by the intercession of judicial discretion. The only purpose served by the conclusion that the mere fact of prior police employment cannot be disclosed because it is not information "similar to the misconduct alleged by the petitioner" is to cut off discovery before it has begun. This sort of categorical and hypertechnical denial of disclosure cannot withstand close constitutional scrutiny.

With the constitutional constraints in mind, it is hard to see how the mere fact of prior police employment is deserving of more protection than other types of employment history, such as citizen complaints alleging misconduct. The OPD could have produced records responsive to Request No. 10 in

a form limited to redacted documents showing the dates of employment by the OPD and identifying only the location of prior police employers within the five years. Nothing more was requested; and in our view the ambit of the court's finding of materiality must be thus inclusive in order to carry out the mandate of the statutes that implemented the *Pitchess* procedure.

The statutory procedural scheme hinges upon the trial court's responsibility to determine whether otherwise privileged evidence might be important to the defense. "When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself. (*Santa Cruz, supra,* 49 Cal.3d at p. 84.) . . . Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review. But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court. Such practice is consistent with the premise of . . . sections 1043 and 1045 that *the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records.* . . . [¶] The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review." (*Mooc, supra,* 26 Cal.4th at pp. 1228-1229, italics added.)

We are not presented with the issue discussed by the Supreme Court in *Mooc, supra,* 26 Cal.4th 1216, because no records were produced by the OPD in response to Request No. 10. In *Mooc,* the problem was the inadequacy of the record; and the opinion considered whether the entire personnel record needed to be produced for the trial court's in camera review. Here, the question is whether minimal, neutral information concerning prior law enforcement employment should be produced because it could lead to relevant evidence. While the Supreme Court has observed that "[a] law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, *employment applications,* letters of recommendation, promotion records, and health records," (*Mooc,* at p. 1229), it has never retreated from the view that where a defendant "has fulfilled these prerequisites and made a showing of good cause, *the custodian of records should bring to court all documents 'potentially relevant' to the defendants motion.*" (*Id.* at p. 1226, citing *Santa Cruz, supra,* 49 Cal.3d at p. 84, italics added.)

The record suggests several hypothetical situations in which the simple fact that the officers had been employed by the OPD for less than five years

could lead to relevant evidence. Since the trial court had already determined that three incidents involving the two officers should be disclosed, the length of time within which these incidents occurred could be relevant. A smaller number of complaints within a short period of employment can assume greater weight as evidence. Obviously, the disclosure that an officer had been employed by multiple police departments within a short time period could suggest evidence of prior misconduct relevant to a defense; because one reason for serial police jobs (which was discussed in the trial court) could be precisely the type of misconduct the *Pitchess* motion was designed to uncover. Assuming further inquiry into prior employment is undertaken, a trial court might also determine that the reason given for leaving a prior job could be relevant to the defense based on misconduct alleged in the pending case. Ultimately, relevant material such as prior citizen complaints could be found in a prior employer's files.

This is not to say that this trial judge could not have reviewed the files and found there were no potentially relevant facts pertaining to length of employment or prior employment. We are not attempting to substitute our view of the evidence for the trial court's. " 'A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard . . . .' " (*Mooc, supra,* 26 Cal.4th at p. 1228, citing *People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221 [56 Cal.Rptr.2d 49, 920 P.2d 1254]; *People v. Breaux, supra,* 1 Cal.4th at pp. 311-312.)

We simply hold that the privilege protecting the privacy of police officers does not, as a matter of law, prevent disclosure of the fact of prior law enforcement employment within the parameters described by the statutes. To hold otherwise would be to judicially amend the statutes to limit discovery to "the lesser of five years or the term of current employment." If the discovery procedures implemented by the Legislature were limited to current employment, rather than the time period expressly set by the Legislature, and if the peace officer privilege thereby precluded discovery of evidence potentially relevant to the defense, the balance conceived in *Pitchess* would be upset. It is therefore not permissible to conclude that information pertaining to prior police employment is not discoverable by means of a *Pitchess* motion. If this were the law, the constitutional protections recognized in *Pitchess,* implemented by the Legislature, and often repeated by the Supreme Court, could be circumvented by simply changing jobs.

## DISPOSITION

Let a peremptory writ of mandate issue commanding respondent superior court to vacate that portion of its order sustaining the OPD's objection to

production of portions of the officers' personnel files pertaining to length of employment by the OPD and employment by other law enforcement agencies. The cause is remanded to the trial court for further proceedings consistent with this opinion, including any supplements to the motion and opposition that court may deem necessary.

Kline, P. J., concurred.

**HAERLE, J.**—I respectfully dissent. I believe the majority (1) mischaracterizes the trial court's ruling regarding the issue of good cause and, in the process, fails to address that court's explicit (and correct) ruling that petitioner *did not* show good cause for his request No. 10, (2) incorrectly posits a de novo standard of review and errs by holding, alternatively, that the court either failed to exercise or abused its discretion, (3) misapplies the admittedly applicable relevancy test, and (4) in the process effectively announces a statewide amendment to Evidence Code sections 1043 and 1045 (sections 1043 and 1045).

I will discuss these points in the order just noted.

### I.

The majority's opinion rests very substantially on the premise that the trial court in fact found "good cause" for the grant of petitioner's "Request Number 10" (Request 10). Because I believe the record belies this, a brief summary of that record is appropriate.

First of all, it is noteworthy that counsel for the real party in interest, the Oakland Police Department (OPD), objected on "good cause" grounds to *both* the motion in its entirety *and* as to Request 10 specifically. In his reply to the OPD's opposition, petitioner argued, first of all, the merits of his "Request Number 9" (Request 9) and then (albeit only on constitutional "right to fair trial" grounds) regarding Request 10. Only a short paragraph at the end of a four-plus-page reply brief argued anything at all regarding good cause—and then only in the most conclusory terms. Nothing regarding "good cause" for Request 10 specifically was proffered.

Oral argument before the trial court focused only on two of the 10 paragraphs in petitioner's motion, Requests 9 and 10.[1] Request 9 called for "[d]isclosure of all police report numbers associated with discoverable

---

[1]The parties either stipulated to the outcome regarding some or all of the other eight paragraphs or the court denied their requests in rulings which no one protested at the time or has since. Nary a word was said regarding "good cause" in the course of this.

records of complaints, or investigations, or records of discipline imposed as a result of investigation." After extended oral argument regarding it, the court ruled in favor of petitioner on the basis that, since its previous practice was to provide the personnel file number as and when discovery of the file itself was ordered, there "is as much good cause to provide the associated police report number."

The argument then turned to Request 10, the paragraph involved here. As soon as it took up that request, the court posed a quasi-jurisdictional question, asking whether there would not necessarily have to be a "finding of materiality . . . by another judge in another jurisdiction" if it turned out that the officer had previously been employed in that other jurisdiction. It also expressed concern about sparing "the officer from having to reveal embarrassing information out of his personnel file absent a showing of good cause." It summed up its concern by noting that if petitioner's position was correct, any defense counsel could get information about an officer previously terminated in San Francisco and then "be able to embarrass that officer on the stand with it, without even going to the judge in San Francisco."

After further discussion of this point, the trial court moved to another apparent concern, asking: "Isn't the information as to whether a peace officer has been employed as a peace officer by a different agency easily available to you outside of Pitchess? I mean out of the Pitchess motion?" Petitioner's counsel and the court discussed that point for several minutes after which the court asked to hear from OPD's counsel, who had thus far been silent regarding Request 10. She argued that Penal Code section 832.7 "expressly provides that employment history is one of the categories of information that is confidential." In response, the trial court brought up the "good cause" issue, asking: "Is [sic: isn't] there just as much good cause to get the employment history since there's this provision that they may receive discovery in certain instances within five years?"

OPD's counsel responded in the negative, arguing that section 1043 "addresses the records that are maintained by the employing agency. It doesn't establish any type of entitlement to records from prior employment . . . ." She also urged that any discovery of prior employment history would, at the minimum, have to be based on "a showing that the information that has been disclosed is insufficient . . . or will be insufficient . . . ."

Oral argument concluded with petitioner's counsel urging that she was not seeking "all employment history" but just for "the ability to go ahead and make another Pitchess. We're not asking for anything further than that. And I don't think it's burdensome."

The matter was then deemed submitted and the court rendered its ruling denying Request 10. The premise for its ruling was that "facts of whether an officer has been employed as a peace officer within the last five years could lead to other sensitive information." But, it recognized, "often sensitive information is disclosed pursuant to a Pitchess motion" and, therefore, in order to sustain a finding of materiality, there is "the requirement of a *specific factual scenario* under the law. . . . [T]here is, I think, the danger, *which certainly wouldn't apply in all cases or even the majority of cases*, that disclosure of the employment could lead to other sensitive information outside the good cause showing for the materiality. [¶] Therefore, I'm going to sustain the City Attorney's objection to Request 10 and I henceforth will not be supplying that information *unless a specific factual scenario is supplied to me relating to information about such prior employment*." (Italics added.)

The majority states: "The trial court found that petitioner had made a showing of materiality that was sufficient to permit discovery of prior complaints of excessive force or violence, as well as potential evidence suggestive of fabrication of facts by the arresting officers." (Maj. opn., *ante*, at p. 389.) Nothing in the record before us supports this assertion. Indeed, neither the words nor concepts of "good cause" or "materiality" were uttered by either the court or either counsel until the hearing got to the specific issue of Request 9. Thus, nothing in the record suggests the trial court ever made a ruling that petitioner's motion, even considered as a whole, was supported by "good cause."[2]

But even if there had been such a general ruling, it would not be sufficient. The concept of "good cause" in this context means a showing *specific to the challenged request.* One of our sister courts has recently summarized that law: "The California Supreme Court has clarified the meaning of the 'good cause' requirement in Evidence Code sections 1043 and 1045. A showing of 'good cause' requires defendant to demonstrate the relevance of the requested information by providing a 'specific factual scenario' which establishes a 'plausible factual foundation' for the allegations of officer misconduct committed in connection with defendant. [Citations.] . . . [¶] . . . [¶] *Further, our Supreme Court has indicated that a*

---

[2] I concede that OPD seems to assume the same thing the majority assumes, i.e., that somewhere, sometime, the trial court had made some sort of generalized finding of "good cause" as to petitioner's motion. In both of its opposition briefs in this court, OPD's counsel states that, at the hearing of May 31, 2001, the trial court "ordered the City to produce certain information contained in the personnel records of [the two officers] of the [OPD], including the names, addresses and telephone numbers of complainants and witnesses to the particular incidents underlying a citizen complaints found relevant after *in camera* review." I am, frankly, surprised by these statements. In the first place, OPD objected on "good cause" grounds to petitioner's motion *as a whole* in a pleading dated two days before the May 31 hearing. Second, try as I can, I find no such ruling in the record before us. As noted above, every request prior to Requests 9 and 10 was either agreed upon between counsel or denied.

*showing of good cause must be based on a discovery request which is tailored to the specific officer misconduct that is alleged.* Thus, 'when a defendant asserts that his confession was coerced, a discovery request that seeks all excessive force complaints against the arresting officer is overly broad . . . [instead] "only complaints by persons who alleged coercive techniques in questioning [are] relevant." ' [Citations.] The trial court will properly deny such an overbroad discovery request. [Citation.] [¶] In other words, only documentation of past officer misconduct which is similar to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery." (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1020-1021 [101 Cal.Rptr.2d 379] (*CHP*), italics added and omitted; see also *City of San Jose v. Superior Court* (1998) 67 Cal.App.4th 1135, 1145-1150 [79 Cal.Rptr.2d 624] (*City of San Jose*).)

After this statement of the applicable law, the *CHP* court concluded that the petitioner's *Pitchess* motion—considered generally—satisfied this standard: "His initial *Pitchess* motion provided a specific factual scenario (the CHP officers used excessive force in arresting the defendant) established by a plausible factual foundation (an independent witness to the arrest would testify that the officers had used excessive force). Thus, with regard to complaints of excessive force, defendant met the Evidence Code section 1043 good cause standard and the trial court was authorized to conduct an in camera review of the officers' personnel records with respect to such complaints." (*CHP, supra,* 84 Cal.App.4th at p. 1022.) But, after so ruling, the court nonetheless granted a writ directing vacation of the trial court's order because that order required release of *documents regarding different issues than those as to which "good cause" had been shown.* (*Id.,* pp. 1022-1023; see also *City of San Jose, supra,* 67 Cal.App.4th at pp. 1046-1050.)

The *CHP* principle is directly applicable here. A generalized showing of some sort of "good cause" which may justify a trial court conducting an in camera review of a specific officer's personnel file, is not enough to support an order for production of records *unrelated to the good cause alleged and shown.* Put another way, the "good cause" alleged must have some specific relationship to what is being asked for by way of records.

Such was manifestly not the case here. No effort to show good cause regarding Request 10 was made in petitioner's moving papers. By contrast, a very brief declaration of petitioner's counsel attempted to justify, with at least a certain degree of specificity, requests for records pertaining to "acts involving illegal search and seizure," "prior acts of fabrication and/or misstatement of facts" and, as to one officer, "acts demonstrating bias on the

basis of sexual orientation or race." But nowhere in the four pages of that declaration was a single word said about the materiality of prior employment, or even that the declarant "was informed and believed" that there had even been any such prior employment within the necessary five-year period. Indeed, as far as can be determined from the record before us, both of the pertinent officers could well have been employed by OPD for 10 years or more. It was, obviously, because of these perceived failures that OPD objected to the trial court that no good cause had been shown in support of Request 10.

The trial court apparently understood the law to be as the *CHP* court has defined it: it first found good cause *had* been made as to Request 9, *but only as to it.* And its questions to counsel during the course of argument on Request 10 clearly assumed that it was dubious as to whether good cause could be established *for that request* on the record before it. Thus, at one point it suggested that there was a "legislative intent, at least from what I've read in the cases, to spare the officer from having to reveal embarrassing information out of his personnel file *absent a showing of good cause.*" (Italics added.) And at a later point, after OPD's counsel argued that Penal Code section 832.7 made employment history information confidential, the court inquired whether that would still apply "if I've made the finding of good cause . . . ." It then posed this question to the deputy city attorney: "Is [*sic:* isn't] there just as much good cause to get the employment history since there's this provision that they may receive discovery in certain instances within five years?"

When it announced its ruling a few pages later, the court clearly *did not* make a finding of good cause as to Request 10; quite to the contrary. Its only reference to the term was in its expressed concern regarding "the danger . . . that disclosure of the employment could lead to other sensitive information outside of the good cause showing for the materiality." To drive the point home, the explicit premise for the trial court's ruling was its finding that the moving defendant had failed to provide a "specific factual scenario" to justify Request 10. And, of course, the phrase "specific factual scenario" derives from cases specifically defining, via that precise phrase, what a showing of "good cause" requires. (See, e.g., *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 85-86 [260 Cal.Rptr. 520, 776 P.2d 222]; *CHP, supra,* 84 Cal.App.4th at pp. 1020-1021; *City of San Jose, supra,* 67 Cal.App.4th at p. 1046.)

In sum, the trial court made no finding of good cause supporting Request 10. To the contrary, it expressly held that no such showing regarding that request had been offered much less effected by petitioner. Thus, its ruling

that "henceforth"[3] it would not be granting requests such as Request 10 unless and until such a "specific factual scenario" (i.e., good cause) was shown.

## II.

I submit that the foregoing summary of the record demonstrates that, contrary to the majority's premise, the trial court *did not* rule as a matter of law that sections 1043 and 1045 do not permit the disclosure of prior employment history and *did* properly exercise its discretion in declining to grant Request 10.

The trial court made clear that it was principally concerned with whether (1) referring a defendant to police personnel files located in another county might well create jurisdictional or logistical problems or both, (2) the information sought in Request 10 could be obtained by other, less intrusive means, and (3) disclosure of prior employment history might inevitably lead to the disclosure of "other sensitive information."

The standard of review of denials of *Pitchess* motions is abuse of discretion. (See, e.g., *People v. Breaux* (1991) 1 Cal.4th 281, 311-312 [3 Cal.Rptr.2d 81, 821 P.2d 585]; *People v. Memro* (1995) 11 Cal.4th 786, 832 [12 Cal.4th 783d, 47 Cal.Rptr.2d 219, 905 P.2d 1305] *(Memro)*; *People v. Samayoa* (1997) 15 Cal.4th 795, 827 [64 Cal.Rptr.2d 400, 938 P.2d 2]; *CHP, supra,* 84 Cal.App.4th at p. 1019.) The majority attempts to avoid this standard by stating that the trial court *either* (1) ruled as a matter of law that the material requested under paragraph 10 was not discoverable, *or* (2) failed to exercise its discretion, *or* (3) abused its discretion. I believe that a simple reading of the trial court's one-page, three-paragraph ruling demonstrates that none of these three alternative holdings are correct.

By using the deliberate and meaningful phrase "specific factual scenario," the trial court was clearly telling the parties that, in the exercise of its discretion, it would not in this case or "henceforth" be supplying employment history information of the sort sought in Request 10 *unless and until*

---

[3]The meaning of "henceforth" became clear at oral argument in this matter. Both counsel agreed that, before approximately 1999, requests such as Request 10 were not included in *Pitchess* motions in Alameda County. Counsel for petitioner candidly stated that she had been the author of that request *circa* 1999 and that, up until the ruling in this case in 2001, such requests had been granted by, first, one criminal court judge and then by the judge handling the instant matter. Neither counsel was aware of any other county where similar requests had been regularly posed, much less granted. Indeed, before us counsel for OPD stated that he had previously appeared on *Pitchess* motions in San Francisco Superior Court, and had never there encountered anything similar to Request 10.

*specific good cause therefor was shown.*[4] That, it seems to me, is a ruling clearly reviewable under an abuse of discretion standard. Given the abbreviated declaration submitted by petitioner's counsel and the fact that that declaration said nothing at all about possible prior police department employment by either officer, I fail to see any abuse of discretion here.

### III.

The majority concedes that any information produced responsive to a *Pitchess* motion must be "relevant" to the issues in the case at hand. (See maj. opn., *ante*, at pp. 394, 396; see also § 1045, subd. (b)). But I believe the majority is wrong that prior employment information is ipso facto "relevant."

In its first interpretation of the 1978 statutes essentially codifying the *Pitchess* rule, our Supreme Court, in an opinion authored by then Chief Justice Bird, ruled that a request by a criminal defendant "for the identities of all complainants of excessive force was overly broad. Since appellant sought the information to bolster his claim of involuntariness in the interrogation setting, only complaints by persons who alleged coercive techniques in questioning were relevant." (*People v. Memro* (1985) 38 Cal.3d 658, 685 [214 Cal.Rptr. 832, 700 P.2d 446].) To the same effect is *People v. Jackson* (1996) 13 Cal.4th 1164, 1220 [56 Cal.Rptr.2d 49, 920 P.2d 1254] (*Jackson*). There, the court held that, when a defendant alleged a coerced confession, only "complaints by persons who alleged coercive techniques in questioning [are] relevant" in a *Pitchess* motion.

This principle has been made very specific in several recent court of appeal cases. Thus, in *CHP* the court cited both *Jackson* and *Memro* as the

---

[4]Although the trial court did not do so, another basis upon which it could have exercised its discretion to deny Request 10 is that, as phrased, it is effectively an interrogatory. Sections 1043 and 1045 are specifically addressed to the production of "records"; indeed, the two statutes use that term 10 and six times respectively. In its most recent decision interpreting and applying sections 1043 and 1045, our Supreme Court repeatedly used the words "documents" and "records" to describe what it is that the police department custodian of records must bring to the trial court and the trial court then examine in camera. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1228-1230 [27 Cal.4th 101a, 114 Cal.Rptr.2d 482, 36 P.3d 21] (*Mooc*). Implicitly acknowledging this requirement, most of the paragraphs of defendant's request specifically ask for "statements," "records," and the like. By way of contrast, Request 10 asks for "[d]isclosure of subject officer'(s) employment at other police departments or agencies within five years . . . ." The *Mooc* court recently reiterated that anything resembling the proverbial "fishing expedition" is simply not appropriate in a motion brought under sections 1043 and 1045: "[T]he information sought must be requested with sufficient specificity to preclude the possibility of a defendant simply casting about for any helpful information." (*Mooc, supra,* 26 Cal.4th at p. 1226.) Unsupported as it was by even an information and belief declaration that either of the named officers worked elsewhere as a peace officer within the preceding five years, Request 10 is thus a classic example of "simply casting about for any helpful information."

source of the rule that "[O]nly documentation of past officer misconduct which is *similar* to the misconduct alleged by defendant in the pending litigation is relevant and therefore subject to discovery." (*CHP, supra,* 84 Cal.App.4th at p. 1021; see also *People v. Gill* (1997) 60 Cal.App.4th 743, 749-750 [70 Cal.Rptr.2d 369], and *Mooc, supra,* 26 Cal.4th at pp. 1226-1229.) Because Request 10 does not seek information regarding past misconduct by the two officers "which is similar to the misconduct alleged by" petitioner, it does not seek relevant information under sections 1043 and 1045.

## IV.

My fourth and final problem with the majority's decision is a practical one: it will inevitably enlarge the breadth of motions filed statewide under sections 1043 and 1045. Thus, if Request 10 is acceptable under those sections, why not the following hypothetical Request 11: "In addition to the names of any police department or agency by which either of the subject officers was previously employed within the past five years, please supply any and all information in your files regarding (a) the positions each held in any such department or agency and (b) the dates he or she held each such position."

The "five-year rule" implicated here derives, of course, from section 1045, subdivision (b)(1), which provides that material "consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation" is, as a matter of law, irrelevant and thus not subject to disclosure. (§ 1045, subd. (b)(1).) I concede that neither that section nor any other statute addresses the issue of what a defendant should do when an officer who is the subject of a motion under those sections has been—or even may have been—employed for less than five years by the subject police department. In such a circumstance, by definition that department could not produce any otherwise relevant complaints concerning him or her covering a full five years. But if this omission is significant (and I'm not inclined to believe it is), correcting it is a matter for the Legislature, not the judiciary.

The majority apparently disagrees, because its ruling effectively grafts onto sections 1043 and 1045 an amendment providing: "If an officer who is the subject of a motion under these sections has not been employed by the pertinent department for a full five years, that department shall search its personnel files and reveal to the movant any previous employment by that officer with another police department or agency." Further, and as discussed in part I above, its holding means that this may be done without any showing

of good cause specifically relating to such prior employment records. If this de facto amendment is allowed to stand, it will impact not just OPD but also each and every police and sheriff's department in the state. I hope it will not be allowed to stand.

For all of these reasons, I would deny the petition.

The petition of real party in interest for review by the Supreme Court was denied October 16, 2002. Kennard, J., Baxter, J., and Chin, J., were of the opinion that the petition should be granted.