Filed 4/16/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT RISKE,<br><br>        Petitioner,<br>        v.<br><br>THE SUPERIOR COURT<br>OF LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>CITY OF LOS ANGELES,<br><br>        Real Party in Interest. | B283035<br><br>(Los Angeles County<br>Super. Ct. No. BC557535) |

ORIGINAL PROCEEDINGS in mandate, Mark V. Mooney, Judge. Petition Granted.

Law Offices of Gregory W. Smith, Gregory W. Smith, Diana Wang Wells; Benedon & Serlin, Douglas G. Benedon, Gerald M. Serlin and Judith E. Posner for Petitioner.

No appearance for Respondent.

Michael N. Feuer, City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Paul L. Winnemore, Deputy City Attorney, for Real Party in Interest.

---

Robert Riske, a retired Los Angeles police officer, sued the City of Los Angeles alleging the Los Angeles Police Department had retaliated against him for protected whistleblower activity by failing to assign or promote him to several positions and selecting instead less qualified candidates. Riske filed a discovery motion pursuant to Evidence Code sections 1043 and 1045[1] to obtain certain summary personnel records relied on by the City in making assignment and promotion decisions. After the superior court erroneously ruled those records were not subject to discovery because the officers selected for the positions Riske sought were innocent third parties who had not witnessed or caused Riske's injury, we issued a writ of mandate directing the superior court to vacate its order denying Riske's discovery motion and to enter a new order directing the City to produce those records for an in camera inspection in accordance with section 1045. (See *Riske v. Superior Court* (2016) 6 Cal.App.5th 647, 664-665 (*Riske I*).)

The superior court conducted the in camera hearing and ordered the requested personnel records to be produced in accordance with the parties' protective order. However, pursuant to section 1045, subdivision (b)(1), which excludes from disclosure "[i]nformation consisting of complaints concerning conduct occurring more than five years before the event or transaction

---

[1] Statutory references are to this code unless otherwise stated.

that is the subject of the litigation" in which discovery or disclosure is sought, the court ordered redaction of all items in those reports concerning conduct that had occurred more than five years before Riske filed his complaint.

Riske again petitioned this court for a writ of mandate directing the superior court to order the City to produce those records without redaction. In response to our inquiry, both Riske and the City agree that, if section 1045, subdivision (b)'s five-year disclosure bar applies at all, it is measured from the date each officer was promoted instead of Riske—the alleged adverse employment action at issue in the litigation—and not the date Riske filed his complaint, as the superior court ruled. However, Riske also argues more broadly that section 1045, subdivision (b), which prohibits disclosure of stale complaints against police officers, has no application to the personnel reports sought in this case. We agree and grant the petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Riske's Whistleblower Activity*

According to the allegations in his complaint, Riske worked as a police officer with the Department from 1990 until his retirement in September 2014. In 2008, while working as a detective-I in the Southeast Narcotics Enforcement Division, Riske reported two of his fellow officers for filing false police reports and testified against them at an administrative hearing that ultimately resulted in their termination. Afterward, Riske's colleagues referred to him as a "snitch" and refused to work with him, even at times ignoring Riske's requests for assistance in the field. Fearing for his safety, Riske transferred from the Southeast Division to the Harbor Division. Between 2011 and 2013 Riske applied for 14 highly desirable detective-I and

detective-II positions. Notwithstanding his superior qualifications, his applications were repeatedly denied, each time in favor of less experienced or less qualified persons.

2. *Riske's Lawsuit and Discovery Request*

On September 12, 2014 Riske sued the Department for unlawful retaliation in violation of Labor Code section 1102.5, alleging the Department's refusal to assign or promote him to more desirable positions was in retaliation for his protected whistleblower activity. The City answered the complaint, denying the allegations, and then moved for summary judgment. The City argued, among other things, it had a legitimate business reason for its promotional/assignment decisions: The selected candidates were more qualified than Riske.

Prior to responding to the City's summary judgment motion, Riske served the City with a discovery request seeking all documents submitted by the successful candidates for the relevant positions and all documents relied on by the Department to select those officers for the positions, subject to the terms of the parties' stipulated protective order.[2] The City produced some documents, including rating sheets and ranking matrices used by the Department's decision makers for each position, but nothing from the selected candidates' confidential personnel files.

---

[2]     In December 2014 the parties entered into a stipulation, signed as an order by the court, governing production of documents and disclosure of information in the case. Under the terms of the order confidential information produced in discovery would be used solely in connection with the instant matter and viewed only by the parties, their attorneys and representatives participating in this case.

4

### 3. *Riske's Motion To Compel Discovery of Peace Officer Personnel Records*

Riske moved under sections 1043 and 1045 for production of the selected officers' Training Evaluation and Management System ("TEAMS") reports, which summarized the successful candidates' history of discipline, commendations and other personnel matters throughout the officer's employment.[3] To support his request for the TEAMS reports, Riske included an affidavit from retired Captain Joel Justice, a 21-year veteran of the Department, who was familiar with the Department's hiring policies and procedures during the period Riske submitted his applications for reassignment and/or promotion. According to Captain Justice, "TEAMS reports play a crucial role in the [candidate] selection process. Specifically, it is mandatory for supervisors on interview panels to review the TEAMS reports submitted by candidates applying for promotional or coveted positions." "As a supervisor participating in the decision to select

---

[3]    According to the parties, TEAMS is a data system maintained by the Department "to track detailed information pertaining to an officer's entire career with the Department." The report, prepared in a chart format, summarizes the employee's history of (1) discipline, (2) use of force, (3) pursuits, (4) collisions, (5) civil litigation, (6) assignment/rank history and (6) work permit information for "last five years." A blank TEAMS report, provided by the City at our request, is attached as Appendix A, *post*, page 20.

In his discovery motion, Riske also sought the successful candidates' performance evaluations used by the Department to make the employment decisions at issue in the litigation. The court ordered production of those documents, apparently without redactions. They are not at issue in this proceeding.

5

an officer for a promotional or coveted position, I would refer to candidates' TEAMS reports to determine, among other things, how many sustained personnel complaints they had; how many citizen commendations they had received; how many other commendations they had received; how many uses of force they had; and whether their work history evidenced that they were hard-working." The TEAMS reports submitted by the candidates contain only sustained complaints; unresolved or unsustained personnel complaints are not included. Captain Justice stated before making a hiring decision he would run "a final selection process TEAMS report," which would reflect any pending personnel complaints that had not been adjudicated. Information obtained from a candidate's TEAMS reports, together with the candidate's two most recent performance evaluations, would then make up the "final rating of 'Outstanding,' Excellent,' or 'Satisfactory' the decision makers would assign to that officer for the vacant position."

4. *The Court's Denial of Riske's Discovery Motion; Riske's First Writ Petition; Issuance of the Writ Compelling an In Camera Hearing*

The superior court denied Riske's discovery motion, ruling the discovery procedures applicable to peace officer personnel records did not apply to records of third party officers who had not committed any misconduct. Riske petitioned this court for a writ of mandate, challenging that ruling. We issued an order to show cause and stayed further proceedings in the superior court.

On December 12, 2016 we granted Riske's petition for writ of mandate. (*Riske I, supra,* 6 Cal.App.5th at pp. 664-665.) We explained section 1043 requires the party seeking discovery from peace officer personnel records in a criminal or civil case to show

6

good cause for the information by setting forth "'the materiality thereof to the subject matter involved in the pending litigation. . . .'" (*Riske I,* at p. 658, quoting § 1043.) The critical limitation for purposes of the initial discovery threshold, we emphasized, was not officer misconduct but materiality—that is, whether the evidence sought is admissible or may lead to the discovery of admissible evidence. (*Riske I*, at p. 658.) Because Riske's lawsuit is premised on the allegation that individuals less qualified than he were promoted instead of him in retaliation for his protected whistleblower activity, and Riske had made a plausible factual showing that the TEAMS reports play a critical role in that decisionmaking process and could very well reveal the City's stated business reason for selecting the candidates over Riske—they were more qualified—was pretext for unlawful retaliation, we found Riske carried his minimal burden to show good cause to obtain an in camera inspection of the personnel records he requested. Accordingly, we directed the superior court to vacate its order denying Riske's motion to discover the TEAMS reports and performance evaluations of the officers identified in his motion and to enter a new order directing the City to produce those reports for an in camera inspection in accordance with section 1045. We left it to the superior court to determine in the first instance whether, and to what extent, the information it inspected at the hearing was discoverable. (*Riske I,* at pp. 664-665.)

     5.  *The In Camera Hearings*

     During the April 12, 2017 in camera hearing the City's custodian of records, accompanied by the City's counsel in the instant litigation, produced the TEAMS reports and the two most recent personnel evaluations of 10 of the 14 candidates who were

7

selected or promoted to new positions rather than Riske. The custodian stated documents concerning the other four candidates had not yet been located.

Citing the "five-year-lookback provision" in section 1045, subdivision (b), the custodian and the City's counsel proposed that all information in the TEAMS reports relating to conduct that had occurred more than five years before Riske filed his complaint—that is, all information, irrespective of category, relating to officer conduct occurring before September 12, 2009— be redacted prior to disclosure. The court agreed with this interpretation of section 1045, subdivision (b)(1), and ordered redaction of all information relating to conduct before September 12, 2009. (Officer commendations given prior to September 12, 2009 were deemed not subject to the five-year bar and were not redacted.) The court ordered the Department to produce the documents, as redacted, by April 19, 2017 and set a further hearing for May 17, 2017 to review any additional responsive documents.

At the second in camera hearing on May 17, 2017 the court reviewed additional TEAMS reports and performance evaluations for two more officers. The custodian averred the Department had now produced all the reports in its possession.[4] Identifying the same "five-year-lookback provision," the court ordered all the

---

[4]     Riske has not challenged the custodian's assertion the Department had produced all responsive TEAMS reports it could locate for the officers Riske had identified.

8

identified unfavorable information occurring before September 12, 2009 be redacted.[5]

6. *The Instant Petition for Writ of Mandate*

Riske petitioned for a writ of mandate seeking production of the TEAMS reports without the court-ordered redactions. After reviewing the transcript of the in camera hearing, we issued an order to show cause, set a briefing schedule and stayed further proceedings in the superior court pending our ruling on Riske's petition.  In its briefing in this court, the City has disavowed its prior interpretation of section 1045, subdivision (b)(1), and now agrees with Riske that the five-year period is measured from the date each officer was selected for a position for which Riske had applied and not the date Riske filed this lawsuit, as the superior court ruled.

On November 29, 2017 we invited the parties to address in supplemental letter briefs how section 1045, subdivision (b)(1), is properly applied, if at all, to the contents of the TEAMS reports at issue in this case.  The parties filed supplemental letter briefs on December 14, 2017.

## DISCUSSION

1. *Standard of Review*

We review for abuse of discretion the superior court's discovery ruling concerning the production of a police officer's personnel records following an in camera hearing conducted in accordance with section 1045.  (*People v. Winbush* (2017) 2 Cal.5th 402, 442; *Alford v. Superior Court* (2003) 29 Cal.4th

---

[5]     The court also ordered the City to produce the selected candidates' two most recent performance evaluations.  Riske's arguments in this proceeding relate solely to the TEAMS reports.

9

1033, 1039.)  When the court's ruling involves the interpretation of a statute, we review that question of law de novo.  (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141; *Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072; *Riske I, supra,* 6 Cal.App.5th at p. 657.)

2.  *Governing Law*

In *Riske I* we explained in detail the two-step process mandated by sections 1043 and 1045 for obtaining a police officer's confidential personnel records.  First, the party seeking the information must file a motion with the court describing the records sought, supported by an affidavit demonstrating good cause for their disclosure.  (*Riske I, supra,* 6 Cal.App.5th at pp. 654-655, citing § 1043.)  Good cause for discovery under the statutory scheme exists when the party seeking discovery demonstrates through a plausible factual showing the information is material—that is, the evidence sought is admissible or may lead to the discovery of admissible evidence.  (*Riske I,* at pp. 655, 658, citing *People v. Gaines* (2009) 46 Cal.4th 172, 179; *Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.)

If the threshold showing of good cause is met, the trial court reviews the pertinent documents in chambers in conformity with section 915 and discloses only that information that is relevant to the subject matter involved in the pending litigation.  (§ 1045, subd. (a); *Riske I, supra,* 6 Cal.App.5th at p. 656.)  Although relevance is the sole criterion for disclosure (§ 1045, subd. (a)), the Legislature has identified certain information that is categorically not subject to disclosure, in effect, deemed irrelevant as a matter of law.  In particular, section 1045, subdivision (b), requires the trial court when considering

10

relevance to "exclude from disclosure:  [¶]  (1)  Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation"; "(2) [i]n any criminal proceeding the conclusions of any officer investigating a [citizen] complaint"; and "(3) [f]acts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit."  (§ 1045, subd. (b)(1)-(3); see *Riske I,* at p. 656.)[6]

In addition to these mandatory discovery limitations identified in section 1045, subdivision (b), when "litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records." (§ 1045, subd. (c).)  The court may also make any order "justice requires" to protect the officer or law enforcement agency from "unnecessary annoyance, embarrassment or oppression."  (§ 1045, subd. (d).)  And even when discoverable, the court must order the confidential records be used only in connection with the proceeding in which they are requested and for no other purpose. (§ 1045, subd. (e).)

---

[6]    If a citizen complaint is more than five years old and has exculpatory value under *Brady v. Maryland* (1963) 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215], it is discoverable under the due process clause notwithstanding the statute's five-year bar to disclosure.  (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14-15.)

3. *The Superior Court Erred in Excluding All Information Relating to Conduct Occurring More than Five Years from the Date Riske Filed his Lawsuit*

Riske and the City now agree the five-year disclosure bar applies to citizen complaints concerning and officer's conduct occurring more than five years before he or she was selected for a position. For example, as to an officer selected or promoted in January 2013 to a position for which Riske had also applied, complaints against that officer concerning conduct that occurred prior to January 2008 would be excluded under section 1045, subdivision (b)(1). Because the superior court used the date Riske filed his lawsuit, rather than the date each identified officer was selected for the desired position, the parties agree the court erred in its redaction order.

Although Riske and the City agree on the correct interpretation of the five-year disclosure bar, they sharply disagree on the proper application of section 1045 to the contents of the TEAMS reports. Riske contends nothing in the TEAMS reports used by the Department in making assignment and promotion decisions is a citizen "complaint" as that term is used in section 1045, subdivision (b)(1), and the reports are not subject to that provision's disclosure bar. The City, in contrast, contends section 1045, subdivision (b)(1), applies to a broad range of matters relating to complaints and argues information in the TEAMS report involving discipline, use of force, pursuits, collisions and civil litigation and other matters necessarily related to, or obtained from, citizen complaints must be redacted if the event prompting the complaint occurred more than five years before Riske was denied a position.

a. *Section 1045, subdivision (b)(1), applies only to complaints*

In construing section 1045, subdivision (b)(1)'s five-year disclosure bar, we rely on well-settled and familiar principles of statutory interpretation. "Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of a statute, as the most reliable indicator of legislative intent. [Citation.] ""Words must be construed in context, and statutes must be harmonized, both internally and with each other, to the extent possible.' [Citation.] Interpretations that lead to absurd results or render words surplusage are to be avoided.""" (*Tuolomne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037; accord, *In re D.B.* (2014) 58 Cal.4th 941, 945-946.) "A court may not, 'under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.'" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

We begin with the language of section 1045, subdivision (a), which states "[n]othing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints or discipline imposed as a result of those investigations . . . provided that information is relevant . . . ." In other words, information that is relevant is discoverable. (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 11 (*City of Los Angeles*).) In sharp contrast to subdivision (a)'s expansive language, section 1045, subdivision (b)(1), is quite narrow, excluding only "[i]nformation consisting of [citizen] complaints concerning conduct more than five years" before the event at issue in the litigation. (See *City of Los Angeles,* at p. 11 [under

13

section 1045, subdivision (b)(1), "there is no statutory right to disclosure of citizen complaints of police misconduct that occurred 'more than five years before' the charged crime"].)

Section 1045, subdivision (b)(1)'s use of the phrase "consisting of complaints" rather than "relating to" complaints is telling. Matters pertaining to complaints, including investigative reports and statements of disciplinary consequences as a result of a complaint, expressly identified as discoverable in subdivision (a), if relevant (see *City of Los Angeles, supra,* 29 Cal.4th at p. 11), are not identified in subdivision (b)(1). Investigatory conclusions are specified in subdivision (b)(2), but excluded in "criminal proceeding[s]" only. The omission of these categories of information from subdivision (b)(1), when expressly included in subdivisions (a) and (b)(2), unmistakably demonstrates the Legislature's intent to confine section 1045, subdivision (b)(1)'s five-year bar to citizen complaints only. (See *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 725 ["'when the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded'"]; *Roy v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352 ["'[w]hen the Legislature uses different words as part of the same statutory scheme, those words are presumed to have different meanings'"]; see also *People v. Licas* (2007) 41 Cal.4th 362, 367 ["""[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed""'"]; *City of Port Hueneme v. City of Oxnard* (1959) 52 Cal.2d 385, 395 [same].)

This conclusion is reinforced by considering section 1045, subdivision (b)(1)'s five-year bar in context with other statutes

14

enacted as part of the same statutory scheme.  (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 13 ["""""we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness"""""]; *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [same].)  Penal Code section 832.5, among the statutes enacted with section 1045, requires law enforcement agencies to retain "complaints and any reports or findings relating to [a] complaint" for "at least five years" (Pen. Code, § 832.5, subd. (b)), after which time those records may be destroyed if not otherwise prohibited as a matter of department policy.  (*City of Los Angeles, supra,* 29 Cal.4th at p. 11.)  Likewise, after five years, a citizen complaint is no longer discoverable (§ 1045, subd. (b)(1)).  These parallel five-year periods, the Supreme Court has suggested, are not coincidental.  They reflect a "legislative recognition that after five years a citizen's complaint of officer misconduct has lost considerable relevance." (*City of Los Angeles,* at p. 11.)

Significantly, Penal Code section 832.5's retention requirements apply to "complaints and any reports or findings relating to these complaints . . . ."  (Pen. Code, § 832.5, subd. (b).)  If, as the City asserts, the term "complaint" as used in the context of peace officer personnel records encompasses all information related to a complaint, it would have been unnecessary for the Legislature to include the additional phrase "reports or findings relating to" complaints in Penal Code section 832.5.  (Cf. *Reno v. Baird* (1998) 18 Cal.4th 640, 658 ["[i]t is a maxim of statutory construction that '[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word [or phrase] surplusage'"]; *State ex rel. Bartlett v. Miller*

15

(2016) 243 Cal.App.4th 1398, 1410 [same].)  In short, when the Legislature wanted to include not only complaints but also information "relating to" complaints, it plainly knew how to do so. (See *Brown v. Kelly Broadcasting Co., supra,* 48 Cal.3d at p. 724; *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 565 [court is obligated to interpret different terms used by the Legislature in the same statutory scheme to have different meanings].)  It elected in section 1045, subdivision (b)(1), to specify only a strictly limited type of document.

To support its argument that section 1045, subdivision (b)(1)'s five-year bar applies not only to complaints but also to all conduct, including disciplinary consequences, relating to a complaint, the City relies primarily on language in *Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386 (*Fletcher*), which stated, "'[t]he five-year restriction in section 1045 . . . applies only to records of "complaints, or investigations of complaints, or discipline imposed as a result of such investigations."'" (*Fletcher,* at p. 399, quoting *People v. Superior Court* (*Gremminger*) (1997) 58 Cal.App.4th 397, 407 (*Gremminger*).)  While there is no question that comment supports the City's argument, the *Fletcher* court was not asked to, and did not, decide the scope of section 1045, subdivision (b)(1).  Rather, because the plaintiff in *Fletcher* only sought records within five years of the date of the occurrence at issue in the litigation, the *Fletcher* court, like the *Gremminger* court it quoted, conflated subdivisions (a) and (b) of section 1045 in summarizing the governing law without actually considering the breadth of the five-year disclosure bar.  (See *Fletcher,* at p. 400 [personnel records requested by plaintiff pertaining to

16

prior law enforcement employment within last five years were relevant and discoverable; nothing in section 1045, subdivisions (a) or (b) excluded such records from scope of discovery]; *Gremminger,* at p. 407 [personnel records of a peace officer criminal defendant are not exempt from discovery under sections 1043 and 1045].)  Even the Supreme Court has at times used broad language in dicta describing section 1045, subdivision (b)(1).  (See, e.g., *People v. Gaines*, *supra*, 46 Cal.4th at p. 182 [following an in camera hearing, the "trial court may then disclose information from the confidential records that 'is relevant to the subject matter involved in the pending litigation' (Evid. Code, § 1045, subd. (a)), provided that the information does not concern peace officer conduct occurring more than five years earlier"]; but see *City of Los Angeles*, *supra*, 29 Cal.4th at p. 6 [under section 1045, subdivision (b)(1), "'complaints concerning [police officer] conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery . . . is sought' must be 'exclude[d] from disclosure'" (italics omitted)]; *People v. Mooc* (2001) 26 Cal.4th 1216, 1226-1227 [same, quoting statute].)  Of course, "'[i]t is axiomatic that cases are not authority for propositions not considered.'"  (*People v. Avila* (2006) 38 Cal.4th 491, 566; *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 [same].)

The City's reliance on *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1082, is also misplaced.  There, William Haggerty brought a civil action against a San Diego County sheriff's deputy, alleging the deputy had used excessive physical force while Haggerty was incarcerated in county jail.  Haggerty moved pursuant to sections 1043 and 1045 to obtain the internal affairs report of the incident.  Following an in camera hearing,

17

the trial court ordered the sheriff's department to disclose the internal affairs investigative report. The deputy petitioned for a writ of mandate, arguing Haggerty was entitled only to identifying information of the witnesses and not the full report. Division One of the Fourth District granted the petition in part. Although it rejected the deputy's argument that the report was not discoverable, it held the investigatory conclusions, categorically inadmissible in a criminal proceeding under section 1045, subdivision (b)(2), should have been excluded from the production in the civil case because Haggerty had not articulated how that information would have had any meaningful benefit to the litigation. (*Id.* at pp. 1088-1089.) Here, in contrast, Captain Justice's declaration provided the necessary factual predicate for the relevance of the TEAMS reports. If anything, *Haggerty* strengthens our conclusion that all relevant material apart from citizen complaints more than five years old is discoverable, unless excluded under other provisions of section 1045, subdivision (b), something the court did not address in the instant case.

      b. *TEAMS reports are not "complaints" and do not fall within the categorical exclusion of stale complaints contained in 1045, subdivision (b)(1)*

The TEAMS reports are not citizen complaints nor, as far as we can determine from the record and the parties' briefing, do they directly quote from complaints. Rather, the TEAMS reports contain summaries of personnel matters on which employment-related decisions, such as assignment and promotion, are to be based. As discussed, only complaints, and not broadly all information related to complaints, as proposed by the City, are subject to the five-year disclosure bar in section 1045, subdivision (b)(1). Thus, while the TEAMS report may well

18

identify the nature of a complaint to explain or justify discipline that has been imposed, essential information for the Department's decision makers in using the reports, none of that information is akin to the unfiltered complaint. As such, the TEAMS report is not subject to the categorical exclusion for stale citizen complaints contained in section 1045, subdivision (b)(1).[7]

## DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its April 12, 2017 and May 17, 2017 orders requiring redaction of information in the TEAMS reports pursuant to section 1045, subdivision (b)(1), and to make a new order directing the City to produce those TEAMS reports without redaction. Riske is to recover his costs in this proceeding.


PERLUSS, P. J.

We concur:


ZELON, J.


SEGAL, J.

---

[7] We not suggest a citizen complaint that has simply been reproduced or transferred to a different medium (for example, digitized) loses its character as a complaint and becomes subject to disclosure. Indeed, presented with that hypothetical at oral argument, Riske's counsel conceded such a document would be subject to the disclosure bar in section 1045, subdivision (b)(1).

19

# APPENDIX   A

**TEAMS Report**
**Confidential**

| Monitoring Purposes | : | | Name | : |
|---|---|---|---|---|
| Serial No | : | | Rank | : |
| Organization | : | | Peer Group | : |
| Date Range | : | | Current As Of | : |

WARNING – Materials are Confidential and Protected

The information contained in these files and projected on the screen is **CONFIDENTIAL PERSONNEL INFORMATION** and should be treated as such. The fact that this information is accessible to certain select individuals on a "NEED TO KNOW" basis does not diminish the confidential nature of this material. In that it may contain information obtained from peace officer personnel records concerning discipline, use of force, attendance, medical information, or injured on duty status, whether in cursory form or in detail, said information is subject to protection as confidential personnel documents under Penal Code Sections 832.7, 832.8, Government Code Sections 6254 (c),(g),and 6255, and Article 1, Section 1 of the California Constitution.

**DISCIPLINE INFORMATION**

| CF Number | Report Date | On Duty? | Accused Case Status | Allegation /Disposition (Qty) | Non Disciplinary Action | Penalty (Days) | COR | SA | ST |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**USE OF FORCE INFORMATION - NON-CATEGORICAL**

| Case No. | Incident Date | On Duty? | Case Status | Final Dispositions | | | | Action(s) Taken |
|---|---|---|---|---|---|---|---|---|
| | | | | Findings Type | UOF Type | Findings | Action | |
| | | | | Findings Type | UOF Type | Findings | Action | |
| | | | | Findings Type | UOF Type | Findings | Action | |
| | | | | Findings Type | UOF Type | Findings | Action | |

**USE OF FORCE INFORMATION - CATEGORICAL**

**PURSUIT INFORMATION**

**COLLISION INFORMATION**

**CIVIL LITIGATION INFORMATION**

| Effective Date | Area/Division | Rank | Position Description |
|---|---|---|---|

**WORK PERMIT INFORMATION - LAST 5 YEARS ONLY**

**FIREARMS QUALIFICATION INFORMATION - LAST 5 YEARS ONLY**

| Attempted Date | Receipt Number | Qualified | Weapon Used |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**TEAMS Report**
**Confidential**

| Monitoring Purposes : | Name : |
|---|---|
| Serial No : | Rank : |
| Organization : | Peer Group : |
| Date Range : | Current As Of : |

**FIREARMS QUALIFICATION INFORMATION - LAST 5 YEARS ONLY**

| Attempted Date | Receipt Number | Qualified | Weapon Used |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**STOPS INFORMATION**

# of Pedestrian Stops :

# of Vehicle Stops :

Total Number :

**COMMENDATION INFORMATION**

| Award Date | Type MJR / MNR | Initiated by | Award Name / Comment |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**TRAINING INFORMATION**

| Course Begin Date | Course End Date | Course Title | Course Hours | Course Grade | Reason for Training |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

22

**TEAMS Report**
**Confidential**

| | | | |
|---|---|---|---|
| Monitoring Purposes | : | Name | : |
| Serial No | : | Rank | : |
| Organization | : | Peer Group | : |
| Date Range | : | Current As Of | : |

**TRAINING INFORMATION**

| Course Begin Date | Course End Date | Course Title | Course Hours | Course Grade | Reason for Training |
|---|---|---|---|---|---|
| | | | | | |

**ACTION ITEMS INFORMATION - LAST 5 YEARS ONLY**

| Initiation Date | Action Item | Type | Threshold / Reason | Final Dispositions |
|---|---|---|---|---|
| | | | | |

**CITATION INFORMATION**

| | | | | | |
|---|---|---|---|---|---|
| # of (Traffic) Citations : | | | | | |

**ARREST INFORMATION**

# of Felony Arrests :

# of Misdemeanor Arrests :

Total Number :

END OF REPORT FOR -