Filed 5/2/23 P. v. Gomez-Ortiz CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JUAN EDUARDO GOMEZ-ORTIZ,<br><br>    Defendant and Appellant. | G060857<br><br>(Super. Ct. No. 17WF0693)<br><br>O P I N I O N |

Appeal from postjudgment orders of the Superior Court of Orange County, Scott A. Steiner, Judge. Reversed and remanded with directions.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

## I. INTRODUCTION

Appellant Juan Eduardo Gomez-Ortiz challenges the denial of his motion to vacate a judgment of conviction (based on a guilty plea) pursuant to Penal Code section 1473.6 (all undesignated statutory references are to this code unless otherwise specified). The appeal also seeks our independent review of the trial court's ruling on a supporting *Pitchess*[1] motion for discovery of a former sheriff deputy's personnel records.

The underlying conviction involves an attempted robbery where the victim was hospitalized. The matter was investigated by the former deputy, who filed a report falsely stating pictures of the victim's injuries had been booked as investigative evidence. Pursuant to a plea agreement, appellant pleaded guilty to attempted robbery, assault likely to cause great bodily injury, and admitted inflicting great bodily injury. The trial court suspended imposition of sentence and its 2017 judgment ordered appellant to serve 180 days in county jail and three years probation.

In 2019, Orange County law enforcement agencies wrote two letters regarding evidence booking failures that led appellant to file his underlying 2020 vacatur motion as well as the supporting *Pitchess* motion. The latter resulted in the trial court ordering some information from the former deputy's records to be disclosed. On the vacatur motion, the court ruled appellant was not entitled to an evidentiary hearing based on case precedent.

We conclude both rulings were erroneous. On the *Pitchess* motion, we cannot determine whether the trial court exercised its discretion about information arising from investigations. On the vacatur motion, we cannot conclude the denial of an evidentiary hearing was the correct result. We reverse and remand for further proceedings.

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

## II. FACTUAL AND PROCEDURAL BACKGROUND

*A. Investigation of Attempted Robbery and Arrest of Gomez-Ortiz*

Based on the investigative report of former Orange County Sheriff's Deputy Bryce Simpson, in March 2017, after 2:00 a.m. in the morning on a street in Stanton, two individuals confronted victim T.B. for his money and then one repeatedly punched T.B. in the face. T.B. defended himself with his pocketknife by cutting his attacker, who then fled the scene.

Simpson was part of the law enforcement response and made contact with T.B. in the back of an ambulance, before it transported T.B. to a medical center. According to Simpson's report, T.B.'s face was swollen and his right eye swollen shut. The report represented T.B.'s version of events, including where he had been "drinking" before and where he had been going when attacked. The report noted T.B. was unsure he would be able to identify his attacker.

Simpson continued his interview of T.B. at the medical center and reported T.B.'s injuries consisted of "[m]ultiple facial fractures above and below each eye socket." Simpson's report lists a doctor and four sheriff's deputies witnesses, with no description of what information they purportedly possessed.

During the interview of T.B., appellant arrived at the same medical center with a cut wound. Simpson had a discussion in English with appellant, who claimed he had been injured by a broken glass bottle in a home accident.

According to his report, Simpson investigated the explanation and concluded appellant was T.B.'s attacker. Simpson then conducted an "in-field show-up" near Simpson's patrol vehicle where T.B., while standing 10 feet away from appellant, unequivocally identified appellant as the attacker. When Simpson placed appellant under

3

arrest appellant claimed he only understood Spanish, so a fellow deputy was secured to translate and advise appellant of his *Miranda*[2] rights.

According to Simpson's report, after appellant affirmed his understanding and waiver of rights in Spanish, he maintained he had nothing to do with the attempted robbery of T.B. Appellant elaborated on explaining his own wound, identified a new corroborating witness, and explained "his hand and knuckles were swollen from falling on [his home] stairs."

In addition to his observations on the night of the attack, Simpson reported he had taken pictures of T.B.'s injuries and booked as investigative evidence one "[c]ompact [d]is[c] containing photographs." The parties discuss the compact disc (CD) in their briefing as containing three pictures of T.B.'s injuries that have never been verified.

B. *Charges, Informal Discovery, and Guilty Plea Conviction*

Two days after Simpson's report, the Orange County District Attorney's Office filed a complaint alleging appellant had committed attempted second degree robbery (§§ 664, subd. (a), 211, 212.5, subd. (a)), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), and that appellant personally inflicted great bodily injury on his victim in committing both crimes (§ 12022.7, subd. (a)). The charges implicated a maximum sentence of six years in prison and two strikes for future possible sentencing under the Three Strikes law. (See §§ 667, subd. (c), 1170.12.)

At arraignment, appellant pleaded not guilty and his appointed counsel from the Orange County Public Defender's Office made an informal request for discovery to the prosecutor. While some materials were produced in response they did not include the CD of pictures indicated in Simpson's report, even though the scope of

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

4

the discovery request covered the pictures. (See § 1054.1 [discovery disclosures by prosecutor should include "[a]ll relevant real evidence seized or obtained as a part of the investigation of the offenses charged"].)

Based on the record presented, no further discovery efforts were made by the time of appellant's plea agreement with the prosecutor, entered six weeks after arraignment. With assistance from his counsel and a translator, appellant completed and signed a seven-page form titled "Advisement and Waiver of Rights For a Felony Guilty Plea" (plea form). It contained the following admissions by appellant, meant to serve as the factual basis of his guilty plea: "[O]n March 26, 2017[,] I did willfully and unlawfully by means of force or fear attempt to take the real and personal property of T[.]B. from his immediate presence and also committed an assault upon his person with force likely to cause great bodily injury and did personally inflict great bodily injury." On the next page, appellant's counsel signed the plea form representing counsel had "discussed the charges and the facts with appellant," as well as "the possible defenses" and "possible sentence ranges."

The plea form also included waivers of legal rights that appellant affirmed were knowingly and voluntarily made. Appellant's waivers covered, among others, his rights to a preliminary hearing, to not incriminate himself, to confront witnesses and evidence against him, and to a speedy and public jury trial.

The same day appellant signed his May 2017 plea form, the trial court questioned appellant on his understanding of the form's contents and then accepted his guilty plea. The court suspended imposition of sentence and placed appellant on three years of formal probation on the condition of serving 180 days in county jail. According to the parties, T.B. died the following year of causes unrelated to this matter.

5

*C. Postconviction Events*

In a letter dated March 29, 2019, a prosecutor of the Orange County District Attorney's Office notified the Orange County Public Defender's Office that Simpson's CD of investigation pictures was "never booked into evidence" (the March letter). In its substantive entirety, the letter communicated the following:

"This letter is to notify you that the evidence in the above referenced case, to wit: a compact dis[c] with 3 photographs was never booked into evidence at the Orange County Sheriff's department. All other items of evidence, including the in Field Show-Up Form, the signed Medical Release Authorization Form, and the victim's t-shirt, blue jeans and shoes, appear to have been booked into evidence. On 5/8/17, the defendant entered a plea of guilty to 664(a)-211/212.5(c) PC, 245(a)(4) PC, and admitted two enhancements pursuant to 12022.7(a) PC, and was placed on three years formal probation and ordered to serve 180 days in jail. Please let me know if you need additional information."

Eight months later, in November 2019, the district attorney wrote to the Orange County Sheriff memorializing that the district attorney had recently been informed about the sheriff's department's February 2019 "wide-scale internal audit" of its investigation reports (the November letter). According to the November letter, the department's audit included a finding where, "in 47 [percent] of . . . 121 reports where deputies stated they had collected and booked evidence, there was no evidence booked." The appellate record is unclear on precisely when the November letter or its information was delivered to appellant or his counsel, but the point is immaterial to our disposition here.[3]

In June 2020, former deputy Simpson pleaded guilty to a misdemeanor violation of Government Code section 1222, which prohibits, among other things, a law

---

[3] We have not considered appellant's briefing citations to news articles.

enforcement officer's "willful omission to perform a duty." Simpson's plea form included the following admissions by him: "During the time period of January 1, 2016 through March 14, 2018, in Orange County, I was a person holding a public trust and employment and on numerous occasions during this time period, and specifically on or about October 18, 2017 [i.e., not the March 26 date of the report at issue in this appeal], I did willfully and unlawfully omit to perform a duty legally required of me as a peace officer, namely, to book and timely book evidence in a criminal case, and to write and submit an accurate report concerning the booking of such evidence."

*D.  Filings on Appellant's Vacatur Motion*

On August 27, 2020, appellant filed the vacatur motion underlying this appeal. Appellant argued he was entitled to relief based on section 1473.6, subdivision (a)(3). Appellant contended "the existence of the photographic evidence in [this] case was fabricated" and, on victim injury, contended there were "no photographs in existence which depict[ed] any injury to anyone" and "no way to know whether T.B. sustained injuries from the alleged assault, or whether those injuries were severe." More broadly, appellant asserted that "Simpson's misconduct casts doubt on the veracity of his representations in this case," citing to Simpson's misdemeanor conviction.

The trial court issued an order to show cause inviting the prosecutor to file a return to show appellant's motion lacked merit. The prosecutor filed a return and supporting memorandum that argued: (1) appellant had not shown statutory "fabrication of evidence," let alone "newly discovered evidence" of it; (2) in any case, pictures of the victim's injuries were not "substantially material and probative" as required by statute, because they were at best cumulative evidence on victim injuries; and (3) the motion was filed beyond the statutory 12-month deadline because filing occurred 17 months after the March letter.

7

Two months after the prosecutor's return, appellant filed a February 2021 *Pitchess* motion to discover information from Simpson's personnel records, to prepare appellant's denial (also known as a traverse) of the return. The trial court held a hearing the next week and conducted an in camera review of records brought by the records custodian. The court ordered the custodian to disclose contact information for individuals who had received letters similar to the March letter in this case.

*E. Trial Court's Oral Ruling Denying Vacatur*

The trial court held a November 2021 hearing on the parties' section 1473.6 briefing. According to the hearing transcript, the parties debated whether the court should consider exhibits filed by the prosecutor, such as purported medical records and video footage recorded by sheriff's deputies other than Simpson, without an evidentiary hearing. The court ruled it would not consider any exhibit and none are in the appellate record presented for our review.

The prosecutor argued that the question of "what exactly happened with the photographs" did not require a hearing because there was no reasonable dispute about the extent of T.B.'s injuries and appellant argued there were enough factual disputes implicated by the record to require an evidentiary hearing. The trial court concluded there was "no need for an evidentiary hearing because, like" in *People v. Germany* (2005) 133 Cal.App.4th 784 (*Germany*), section "1473.6 simply [did not] apply to this case." We discuss *Germany infra*, after analyzing the court's *Pitchess* ruling.

### III. DISCUSSION

1.  THE *PITCHESS* MOTION

Appellant and the attorney general agree that we review the in camera hearing on appellant's *Pitchess* motion, which he filed to support his denial of the prosecutor's return on appellant's vacatur motion.

8

*A. Standard of Review and Relevant Law*

We review for an abuse of discretion the trial court's in camera review of the former deputy's personnel records. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1228.) Specifically, we review the sealed transcript of the hearing and not the actual records that were brought to the hearing. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209.) "'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'" (*People v. Jacobs* (2007) 156 Cal.App.4th 728, 737.)

Unless the statutory framework for *Pitchess* motions prohibits disclosure, relevant evidence determined by good cause is discoverable. (*Riske v. Superior Court* (2018) 22 Cal.App.5th 295, 304.) Assuming good cause exists, relevant information from investigations of the subject officer can be ordered disclosed. (*Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1090 (*Haggerty*); accord, *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 55.) On prejudice resulting from an erroneous *Pitchess* motion ruling, the movant must carry a burden to subsequently show a reasonable probability that a different outcome in the litigation underlying the motion would have resulted absent the error. (*People v. Gaines* (2009) 46 Cal.4th 172, 182-183 (*Gaines*).)

*B. Disclosure Analysis*

In this case, appellant's *Pitchess* motion specifically sought, from the Orange County Sheriff's Department's personnel files for Simpson, "records, documents, or items pertaining to" the following topics: "[(1)] Lack of credibility by falsifying police reports and/or providing false testimony; [(2) a]ny acts involving moral turpitude; [(3) a]ny *Brady*[4] material in the former officer's personnel files, including material that is

---

[4] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

9

more than five years old; [(4) a]ny investigation (Internal Affairs or otherwise) into the former officer's actions in the evidence booking scandal conducted by any law enforcement agency, including (but not limited to) the Orange County Sheriff's Department; and [(5) w]hether disciplinary or termination proceedings were imposed on the former officer and the nature of that discipline in any incident involving the above-mentioned conduct."

On good cause, appellant asserted that responsive information would "reflect on the character, habit, and custom of Simpson and . . . tend to prove how he behaved on the day of [appellant]'s arrest and when [Simpson] book[ed], or fail[ed] to book, evidence [in this] case." Counsel for the Orange County Sheriff's Department filed a responsive brief that did not oppose appellant's good cause assertions, but did assert that discoverable information should be limited to the last five years of relevant information.[5]

The trial court conducted a February 2021 in camera review, two-and-a-half months before appellant filed his denial of the prosecutor's return. The in camera hearing transcript shows a custodian of records appeared and, after being placed under oath, presented several sets of documents the court reviewed before making its disclosure ruling. According to its minutes, the court ordered a limitation on the use of information to be disclosed (Evid. Code, § 1045, subd. (e)), and ordered the sheriff's department to disclose limited contact information for potential witnesses. According to the hearing

---

[5] At the time of the 2021 in camera hearing at issue, separate and apart from *Brady* material which does not become irrelevant solely because of time (see *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 14), the statutory framework for *Pitchess* motions deemed information "concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation" irrelevant as a matter of law (Stats. 2002, c. 391, § 2). That time limitation was recently removed by the Legislature. (Stats. 2021, c. 402, § 1.)

transcript, the indicated witnesses received letters similar to the March letter that appellant received in this case.

We cannot discern whether the trial court exercised its discretion about information arising from investigations (see *Haggerty, supra*, 117 Cal.App.4th at p. 1090 [concluding some information from internal affairs report discoverable]; see also *Rezek v. Superior Court* (2012) 206 Cal.App.4th 633, 643 [discussing when officer's privacy interests are "implacated less"]; but see *Galindo v. Superior Court* (2010) 50 Cal.4th 1, 12 [discussing first stage of disclosure]), that could potentially shed light relevant to this case (see *Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1048-1049 ["the materiality standard [for *Pitchess* motions] is met if evidence of prior complaints is admissible or may lead to admissible evidence"]).

## C. Prejudice

Based on our independent but limited review of the trial court's in camera review, we cannot conclude what prejudice, if any, resulted from the court's order on appellant's *Pitchess* motion. Under the circumstances of this appeal, our remand is not conditional. (See *Gaines, supra*, 46 Cal.4th at pp. 182-183 [in jury conviction context, defendant whose *Pitchess* motion was erroneously denied is entitled to demonstrate a "reasonable probability" that if post-remand information been disclosed before, the outcome would have been different].) Instead, we direct the court to allow further proceedings for *both* appellant's *Pitchess* and vacatur motions because we cannot conclude the court reached the correct result on the vacatur motion, for the reasons discussed below. (§ 1260 [appellate court "may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances"].)

11

## 2. THE MOTION TO VACATE JUDGMENT

On appellant's vacatur motion, while the parties dispute the correctness of the trial court's ruling, they agree the court relied on *Germany*. The appellate court there affirmed a summary denial of a vacatur motion after it deduced there was no postjudgment revelation of misconduct that could justify relief. (*Germany, supra*, 133 Cal.App.4th at p. 793.) As noted, the court here concluded there was "no need for an evidentiary hearing because, like *Germany* . . . [section] 1473.6 simply doesn't apply to this case." We read the court's oral statement of reasons for its denial order as relying on *Germany's* deductive reasoning.

### A. *Standard of Review and Relevant Law*

We independently review the trial court's ruling to determine whether it reached the correct result. (See *People v. Ault* (2004) 33 Cal.4th 1250, 1266 ["independent appellate review of a mixed law and fact question is crucial when an excessively deferential appellate affirmance risks error in the final determination of a party's rights"]; see also *People v. Fruits* (2016) 247 Cal.App.4th 188, 205 [focus on result and not reasoning].) For the reasons discussed below, given the limited record presented on appeal, we agree with appellant that the "court's reliance on *Germany* was misplaced."

Relevant to appellant's contentions, section 1473.6 states in part as follows: "(a) Any person no longer unlawfully imprisoned or restrained may prosecute a motion to vacate a judgment for any of the following reasons: . . . [¶] (3) Newly discovered evidence of misconduct by a government official committed in the underlying case that resulted in fabrication of evidence that was substantially material and probative on the issue of guilt or punishment. Evidence of misconduct in other cases is not sufficient to warrant relief under this paragraph. . . . [¶] (b) For purposes of this section, 'newly

12

discovered evidence' is evidence that could not have been discovered with reasonable diligence prior to judgment."

On timeliness, the statute requires in relevant part that a vacatur motion "must be filed within one year of . . . [¶] (1) The date the moving party discovered, or could have discovered with the exercise of due diligence, additional evidence of the misconduct or fraud by a government official beyond the moving party's personal knowledge." (§ 1473.6, subd. (d).)

Section 1473.6's purpose is to allow vacatur to a defendant whose sentence has been served but learns of sufficient government official misconduct that occurred in the defendant's case. (See *Germany, supra*, 133 Cal.App.4th at pp. 791-792 [discussing legislative history].) The section explicitly adopts rules for petitions for writs of habeas corpus (§ 1473.6, subd. (c); see Cal. Rules of Court (CRC), rule 4.551 [governing noncapital habeas corpus petitions]), which include a rule that "[a]ny order denying a petition for writ of habeas corpus must contain a brief statement of the reasons for the denial" (CRC, rule 4.551(g); see *Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 569 (*Rose*) [discussing predecessor rule]).

On the three ruling outcomes that were possible here, we have previously explained that if a trial court issues an order to show cause and formal briefing is complete, "the trial court 'must either grant or deny the relief [requested] or order an evidentiary hearing. An evidentiary hearing is required if, after considering the [motion to vacate], the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the [moving party] may be entitled to relief and the [moving party's] entitlement to relief depends on the resolution of an issue of fact.'" (*People v. Murillo* (2021) 71 Cal.App.5th 1019, 1025-1026, in part quoting *Germany*, *supra*, 133 Cal.App.4th at pp. 790-791; in part quoting CRC, rule 4.551(f).)

13

*B. Section 1473.6 Analysis*

    1. *Germany* is not dispositive of the presently limited record

        The trial court stated *Germany* was "on point" and that it was not ordering an evidentiary hearing because appellant's motion did not "fall within the meaning of [section] 1473.6." Given appellant's "reasonable likelihood" burden at the hearing[6] and the governing provisions just quoted, the court's conclusion could have reasonably meant appellant failed to sufficiently demonstrate one or more of the following required points: (1) the existence of an unresolved factual dispute; (2) the existence of newly discovered evidence of misconduct that resulted in fabricated evidence substantially material and probative on guilt or punishment; (3) that the newly discovered misconduct did not arise only from conduct in other cases; (4) that reasonable diligence could not have led to prejudgment discovery of the misconduct; and (5) a timely-filed motion. (§ 1473.6, subds. (a)(3), (b), (d)(1); CRC, rule 4.551(f).) *Germany* held the third point was where the motion in that case failed.

        The movant in *Germany* had been prosecuted for possession of drugs and a pipe for using drugs. (*Germany, supra*, 133 Cal.App.4th at p. 788.) During a preliminary examination hearing, the movant asserted he was being framed (*ibid.*) and that he had witnessed the arresting officer destroy the same pipe the prosecutor claimed to possess as physical evidence (*id* at p. 787 ["How are you going to come up with a pipe you then crushed?"]).

---

[6] The California Supreme Court has explained "[t]he phrase 'reasonable likelihood' denotes a lesser standard of proof than 'more probable than not." (*Martinez v. Superior Court* (1981) 29 Cal.3d 574, 578 [motion for trial venue change context]; see § 1033, subd. (a) [movant must show "reasonable likelihood that a fair and impartial trial cannot be had in the county"].) We apply the same proposition to section 1473.6 analysis. On ultimate entitlement to relief, e.g., at an evidentiary hearing, "the petitioner must prove by a preponderance of the evidence the [necessary] facts." (*In re Masters* (2019) 7 Cal.5th 1054, 1077 [habeas corpus relief].)

Despite his pre-plea assertion of evidence fabrication, the movant subsequently entered a nolo contendre plea agreement. (*Germany, supra*, 133 Cal.App.4th at p. 788.) The trial court accepted the plea, convicted movant, and in 1998 imposed a two-year prison sentence. (*Ibid.*) Subsequently, the movant discovered his arresting officer had been involved in multiple instances of misconduct in other cases, during the same relevant timeframe. (*Ibid.* [alleging 9 out of 25 cases involving misconduct overturned].) The movant filed his 2003 vacatur motion the same year the section went into effect, i.e., making motion timeliness irrelevant in that case. (§ 1473.6, subd. (d)(2) [motion timely if filed within one year of section's effective date].)

The movant cited the other instances of misconduct and argued the officer had planted the at issue drugs in the movant's case. (*Germany, supra*, 133 Cal.App.4th at p. 787.) The trial court summarily denied the motion and the appellate court affirmed, holding the record indisputably showed the movant had not identified any qualifying "newly discovered evidence" of misconduct required by section 1473.6, subdivision (a)(3). (*Id.* at pp. 787, 789, 794.)

To explain the basis for its holding, the appellate court identified four categories of evidence relied on and observed the first three presented information that the movant either personally knew or "had notice of" before deciding to enter his plea agreement. (*Germany, supra*, 133 Cal.App.4th at pp. 792-793.) For example, the court observed the movant personally knew about the purported destruction of the pipe at the time of his arrest and, 10 days before the nolo contendre plea, "had notice of" a witness's favorable statement to the movant's investigator. (*Ibid.*)

The appellate court explained that none of the first three categories of information could qualify as requisite "newly discovered evidence" because they were discovered prior to judgment and therefore barred by section 1473.6, subdivision (b), which provides that "'newly discovered evidence' is evidence that could not have been

discovered with reasonable diligence prior to judgment." (*Germany, supra*, 133 Cal.App.4th at pp. 790, 792-793.)

The appellate court then examined the final information category remaining: his arresting officer's alleged instances of misconduct in other cases. The court concluded the information was directly covered by the final sentence of section 1473.6, subdivision (a)(3), which still provides that "[e]vidence of misconduct in other cases is not sufficient to warrant relief under this paragraph." (*Ibid.*; *Germany, supra*, 133 Cal.App.4th at p. 793.) In other words, the *Germany* court deduced that the only "new" evidence the movant could rely on for his motion was deemed by statute to be insufficient standing alone.

*Germany's* analysis is sound but factually distinguishable from this case's present posture. There, the record was undisputed that either the movant or his investigator personally knew, before judgment, about the evidence presented in the motion that could satisfy the statute's demand for "newly discovered evidence." (§ 1473.6, subds. (a)(3), (b).) Accordingly, it was irrefutable the movant made his plea decision with all of the information about purported police misconduct that occurred in his case which he later asserted in his vacatur motion.

In contrast, the presently limited record here does not allow the same deductive reasoning before an evidentiary hearing. That is, the record does not compel a conclusion that postjudgment information appellant learned, or could have learned with reasonable diligence, was statutorily barred from qualifying as "newly discovered evidence" in this case. (§ 1473.6, subd. (a)(3).) *Germany's* reasoning depends on points not yet deducible here, so applying it now does not justify an affirmance.

2. Appellant's reasonable likelihood of entitlement to relief

In addition to our disagreement with the trial court's application of *Germany*, we cannot conclude the denial of an evidentiary hearing was correct because of

16

a different ground. The record presents unresolved factual questions on the following points: (1) what fabricated evidence, if any, appellant personally knew or reasonably should have known about before deciding to enter his plea agreement; (2) what other independent sources of evidence might render any fabricated evidence immaterial, for example, as merely cumulative; and (3) the entirety of information Simpson misrepresented in his report. Either of the first two points could obviate the need for a finding on the third.

The closest question in our review is what materiality and probativeness any fabricated evidence would have had at the time judgment was entered. (§ 1473.6, subd. (a)(3) [fabricated evidence must be "substantially material and probative on the issue of guilt or punishment"]; CRC, rule 4.551(f) [question for evidentiary hearing is whether there is a "reasonable likelihood" of satisfying statutory conditions for relief]; see *In re Masters, supra*, 7 Cal.5th at p. 1078 [construing habeas corpus statute: "Materiality is shown if there is a reasonable probability the result would have been different without the false evidence"].)[7] We cannot make a dispositive conclusion on appeal because the record does not show (1) what other sources of evidence existed at the time of judgment nor (2) what potentially fabricated evidence appellant personally knew or reasonably should have known about before deciding to enter his plea agreement. On the first issue, as noted, the trial court did not consider any of the exhibits the prosecutor filed with his return in the court and none are in the appellate record presented for our

---

[7] Indeed, the trial court commented at one point in the underlying hearing that the movant in *Germany* "was denied relief [even though] he had arguably a more credible claim to" relief than appellant here. We understand the court to have meant the materiality of the claimed fabricated evidence in *Germany* was clearer than the materiality that could be claimed here. We agree on the point as a general proposition, but it only reinforces our reading that *Germany's* holding was not based on an insufficient materiality ground. That reading further reinforces our broader conclusion that the court's reliance on *Germany* does not justify an affirmance in this appeal, given the court's oral statement of reasons for its ruling made no explicit finding on materiality.

17

review. This means we have no independent evidence by which to assess the materiality and probativeness of any claimed fabricated evidence.

On the second issue, although the prosecutor's return asserted that "prior to his plea, [appellant] was provided with," among other things, "a copy of" Simpson's report, appellant controverted the allegation through his general denial and neither the trial court nor the parties specifically confirmed or refuted the point at the hearing on appellant's vacatur motion. This left open the question of what information appellant should have known Simpson misrepresented. In sum, the limited appellate record prevents us from dispositively concluding that no unresolved factual issue could sufficiently influence the "reasonable likelihood" of fabricated evidence that was "substantially material and probative on the issue of guilt or punishment." (§ 1473.6, subd. (a)(3).)

We hold the merits of appellant's vacatur motion rest on factual issues that cannot be determined based on the presently limited record and that the trial court's ruling to deny an evidentiary hearing based on *Germany* was incorrect. The parties are entitled to further briefing on section 1473.6 relief prior to the court's decision on whether to (1) order an evidentiary hearing or (2) grant or deny relief without a hearing. (See *People v. Barragan* (2004) 32 Cal.4th 236, 248 [discussing effect of law-of-the-case doctrine on new proceeding after remand].) To support his section 1473.6 briefing, appellant is entitled to another opportunity to seek *Pitchess* discovery governed by the newly-amended version of Evidence Code section 1043, subdivision (b)(1), which no longer has a five-year limitation on past conduct otherwise relevant to the underlying litigation. (Stats. 2021, c. 402 (S.B. 16), § 1, eff. Jan. 1, 2022.) If the court rules an evidentiary hearing is required for appellant's vacatur motion, we note "[t]he petitioner must be produced at the evidentiary hearing unless the court, for good cause, directs otherwise." (CRC, rule 4.551(f).)

## IV.  DISPOSITION

The trial court is directed to allow appellant to renew his *Pitchess* motion to determine whether he is entitled to receive more information from the Orange County Sheriff's Department's personnel files of former deputy Bryce Simpson.  The court is ordered to state the reasons for its ruling on any *Pitchess* motion during the court's in camera review so that the resulting sealed transcript promotes efficient appellate review. The court's November 5, 2021 order denying appellant's motion to vacate judgment is reversed and the matter is remanded for further proceedings to be conducted consistent with the views expressed in this opinion.


                                                        DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.